# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

## No. 201600101

———————————

## THE COURT EN BANC[1]

## UNITED STATES OF AMERICA
Appellee

v.

## KELLEN M. KRUSE
Master-at-Arms Seaman (E-3), U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Bethany L. Payton-O'Brien, JAGC, USN.
For Appellant: Captain Bree A. Ermentrout, JAGC, USN.
For Appellee: Commander James E. Carsten, JAGC, USN;
Major Tracey L. Holtshirley, USMC.

———————————

Decided 22 December 2016

———————————

## PUBLISHED OPINION OF THE COURT

———————————

PALMER, Chief Judge, delivered the opinion of the court in which MARKS, S.J., CAMPELL, S.J., RUGH, J., and GLASER-ALLEN, J., concur.

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of eight specifications of wrongful use of controlled substances, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2012). The military judge sentenced him to 100 days' confinement, reduction to the pay grade of E-1, forfeiture of $300.00 pay per month for three months, and a bad-conduct discharge. A pretrial agreement required, *inter alia*, that the convening authority (CA) suspend any adjudged punitive discharge. While the CA's action on the court-martial was still pending, the appellant was administratively discharged with an other-than-

———————————

[1] Judges Fulton and Hutchison did not participate in the decision of this case.

honorable characterization of service. When taking his action, the CA purportedly disapproved the bad-conduct discharge as an act of clemency.[2]

Although the appellant raised no assignment of error, this court specified the issue of whether the CA violated Article 60, UCMJ, by disapproving the appellant's bad-conduct discharge despite a pretrial agreement to suspend and remit any adjudged discharge.

In a published opinion issued on 3 November 2016, we found that disapproval of the bad-conduct discharge violated Article 60, UCMJ, because it was not permitted by statute, and thus was a nullity. The court then approved the adjudged findings and sentence and enforced the terms of a pretrial agreement, suspending and remitting the bad-conduct discharge due to an intervening administrative separation of the appellant. The government filed an unopposed motion for *en banc* reconsideration which the court granted, withdrawing our 3 November 2016 opinion and issuing this opinion. Upon reconsideration, the court *en banc* again approves the adjudged findings and sentence. Otherwise, we find no error materially prejudicial to the substantial rights of the appellant. Art. 59(a), UCMJ.[3]

## I. BACKGROUND

The National Defense Authorization Act for Fiscal Year 2014[4] (FY14 NDAA) substantially limited CAs' discretion to take action on sentences under Article 60, UCMJ. For courts-martial in which all the offenses occurred after the amendment's effective date of 24 June 2014, a CA "may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge"[5] unless certain exceptions exist. One such exception is a negotiated guilty plea—in which case the CA may "approve, disapprove, commute, or suspend a sentence in whole or in part *pursuant to the terms of the pre-trial agreement*[.]"[6]

---

[2] Although the CA characterized his disapproval of the bad-conduct discharge as "corrective action," the staff judge advocate's recommendation states "[a]s a matter of clemency, I also recommend you disapprove the bad[-]conduct discharge[.]" Staff Judge Advocate's Recommendation (SJAR) dated 16 Feb 2016 at 3. Accordingly, based on our review of the entire record, and in particular the SJAR, we interpret the CA's disapproval of the punitive discharge as an act of clemency.

[3] The CA acted within his authority in disapproving the adjudged reduction to pay grade E-1 and in compliance with the pretrial agreement in suspending all confinement in excess of time served (35 days).

[4] Pub. L. No. 113-66, 127 Stat. 672 (2013).

[5] *Id*. at 956.

[6] *Id*. at 956-57 (emphasis added).

The appellant's convictions involve illegal drug use on or about 24 March 2015, 7 October 2015, and 30 October 2015. With respect to a potential punitive discharge, his pretrial agreement provided:

> May be approved as adjudged. However, if a punitive discharge is adjudged, it *will be suspended* for a period of six (6) months from the date of the convening authority's action, at which time, unless sooner vacated, the suspended punitive discharge *will be remitted* without further action.[7]

The appellant contends the pretrial agreement demonstrates that the CA intended to retain "some degree of control" over the discharge portion of the sentence.[8] Similarly, the government maintains the phrase, "[m]ay be approved as adjudged," reflects the parties' intent to preserve the CA's discretion to approve or disapprove an adjudged discharge—so that the bad-conduct discharge was disapproved pursuant to a term of the pretrial agreement in accordance with Article 60, UCMJ. The government also contends that because the CA disapproved the discharge, this case lacks the Article 66, UCMJ, jurisdictional threshold to warrant appellate review.[9]

## II. DISCUSSION

### A. The pretrial agreement's terms did not preserve the CA's discretion to disapprove a bad-conduct discharge

Absent a trial counsel's clemency recommendation based upon an accused's substantial assistance in investigating or prosecuting another case, Article 60, UCMJ, does not permit CAs to alter an adjudged bad-conduct discharge except "pursuant to the terms of the pretrial agreement."[10] "When an appellate issue concerns the meaning and effect of a pretrial agreement, interpretation of the agreement is a question of law, subject to review under a de novo standard." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009).

A pretrial agreement is a contract created through the bargaining process between the accused and the CA. *See United States v. Lundy*, 63 M.J. 299, 300 (C.A.A.F. 2006); *United States v. Perron*, 58 M.J. 78, 86 (C.A.A.F. 2003); *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). It is well-established in federal and military courts that pretrial agreements will be interpreted using contract law principles. *See Acevedo*, 50 M.J. at 172. Generally, pretrial agreements will be strictly enforced based upon the

---

[7] Appellate Exhibit (AE) III (emphasis added).

[8] Appellant's Brief of 21 Jun 2016 at 5.

[9] Government's Brief of 12 Jul 2016 at 5, 8.

[10] 10 U.S.C. § 860(c)(4)(c) (2013).

express wording of the agreements; however, "[w]hen interpreting pretrial agreements . . . contract principles are outweighed by the Constitution's Due Process Clause protections for an accused." *Id.* (citing *Government of Virgin Islands v. Scotland*, 614 F.2d 360, 364 (3d Cir. 1980)) (additional citations omitted).

"We begin any analysis of a pretrial agreement by looking first to the language of the agreement itself." *Id.* According to the government's interpretation of the pretrial agreement, the CA's disapproval was pursuant to its terms. However, in examining the plain language of the agreement, we find that the parties unambiguously intended to suspend a punitive discharge, should one be adjudged, and remit it at the end of the suspension period—"if a punitive discharge is adjudged, it will be suspended . . . ."[11] We see absolutely nothing in the plain language of the agreement indicating the parties believed the CA would disapprove the discharge, or that they intended to preserve the possibility of disapproval in clemency.

The government argues that the inclusion of the phrase "may be adjudged" and the language that gave the CA the power to suspend meant that the plain and permissive language of the agreement included the power to disapprove. We find this interpretation strays too far outside the four corners of the contract and the express terms therein, and thus we do not agree.

In the context of pretrial agreements involving the Constitutional rights of a military accused, "we look not only to the terms of the agreement, or contract, but to the accused's understanding of the terms of an agreement as reflected in the record as a whole." *Lundy*, 63 M.J. at 301. We acknowledge that pretrial agreements are more than a simple contract between two parties. Therefore, in addition to employing the normal analysis of contract language, we must also examine the military judge's crucial role. "We have long emphasized the critical role that a military judge and counsel must play to ensure that the record reflects a clear, shared understanding of the terms of any pretrial agreement between an accused and the convening authority." *United States v. Williams*, 60 M.J. 360, 362 (C.A.A.F. 2004) (citations omitted). The military judge is required to ensure an accused understands the pretrial agreement and the parties agree to its terms. RULE FOR COURTS-MARTIAL 910(f)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Here, upon announcement of the sentence, the military judge confirmed the terms of the pretrial agreement with the appellant and counsel:

> MJ: All right. Seaman Kruse, as I read part two of your pretrial agreement, I did award a punitive discharge, and the

---

[11] AE III.

4

Convening Authority has agreed to suspend that for 6 months from the date of Convening Authority's action, at which time, unless sooner vacated, that punitive discharge will be remitted without further action[.]

. . . .

Do you understand the effect that part two of your pretrial agreement has on the sentence adjudged by this court?

ACC: Yes, Your Honor.

MJ: Do counsel concur with my explanation of the provisions and effect of the sentence limitation portion of the pretrial agreement?

TC: The government does, Your Honor.

DC: Defense concurs, Your Honor.[12]

Having heard the military judge's interpretation, neither party asserted a belief that the CA also possessed the authority to disapprove the discharge. Thus we find that no Due Process violation occurred. This agreement unambiguously gave the CA the power to suspend and remit the punitive discharge, and nothing more.

**B. Disapproval of the discharge violates Article 60c, UCMJ**

A fundamental precept of our constitutional system is that the legislative power is vested in Congress. U.S. CONST. art. I, § 1; *see Loving v. United States,* 517 U.S. 748, 758, (1996). "An appellate court is bound to assume that the legislative purpose of a statute is accurately expressed in the language of the statute." *Dukes v. Smith*, 34 M.J. 803, 805, (N.M.C.M.R. 1991) (citing *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)). "Unless an appellate court can discover a clearly expressed legislative intent to the contrary, the language of the statute is ordinarily regarded as conclusive." *Id.*

Here, the government does not offer, nor do we find in the legislative history, any clear expression of Congressional intent permitting a CA to take action inconsistent with the law or plain terms of a pretrial agreement. Indeed, we need look no further than the FY14 NDAA which presages the Article 60 changes with the section heading: "Elimination of Unlimited Command Prerogative and Discretion; Imposition of Additional Limitations."[13] Given Congress' clear desire to limit CA discretion in granting post-trial sentencing relief, we are unable, as the government urges, to read

---

[12] Record at 78-79.

[13] Pub. L. No. 113-66, 127 Stat. 672 (2013) at 955.

this agreement so broadly as to permit the CA to grant relief that was not specifically contained within the pretrial agreement.

## C. The disapproval of the discharge was a nullity

We find that the portion of the CA's action purporting to disapprove the bad-conduct discharge, having no basis or justification in law, was a nullity. *See United States v. Tarniewicz*, 70 M.J. 543, 544 (N-M. Ct. Crim. App. 2011) (holding that to the extent a CA's action directed a punitive discharge executed after final judgment in violation of Article 71, UMCJ, was *ultra vires* and thus a nullity). Rather than unnecessarily ordering a new CA's action in this case, we take the existing CA's action and disregard any portion that is not permitted by law.

The only action the CA could lawfully take regarding the adjudged punitive discharge was to approve it pursuant to Article 60, UCMJ. Consequently, we find that since his disapproval of the punitive discharge was a nullity, this court has Article 66, UCMJ, jurisdiction over this matter.[14] When a CA fails to take action required by a pretrial agreement, this court has authority to enforce the agreement. *See United States v. Cox*, 46 C.M.R. 69, 72 (C.M.A. 1972).

### III. CONCLUSION

We affirm the findings and adjudged sentence. As the appellant was administratively discharged while the CA's action was pending,[15] the bad-conduct discharge was remitted as a matter of law on the date of the CA's

---

[14] The fact that the appellant was administratively separated prior to the purported disapproval of his punitive discharge does not deprive the court of jurisdiction. An administrative separation of an accused who has been found guilty does not vacate the conviction or terminate the process of appellate review. *United States v. Montesinos*, 28 M.J. 38, 46 (C.M.A. 1989). In *United States v. Jackson*, the Court of Military Appeals asserted continuing jurisdiction over the case despite the execution of an administrative discharge: "On several occasions, the Court has held that '[o]nce jurisdiction attaches, it continues until the appellate processes are complete,' and, therefore, jurisdiction is not lost when an accused is administratively discharged while his case is pending before an appellate court. Case law, therefore, demonstrates that our jurisdiction is soundly based." 3 M.J. 153-54 (C.M.A. 1977) (quoting *United States v. Entner*, 36 C.M.R. 62, 62 (C.M.A. 1965)) (additional citations omitted).

[15] Navy regulations do not prevent the administrative separation of a Sailor with an adjudged punitive discharge. *But see United States v. Watson*, 69 M.J. 415, 420 (C.A.A.F. 2011) (noting that the Army has exercised "the authority of the military departments to issue regulations that have the effect of precluding an administrative discharge from taking effect") (citing *United States v. Estrada*, 69 M.J. 45, 48 (C.A.A.F. 2010).

action.[16] R.C.M. 1108(e); *United States v. Spradley,* 41 M.J. 827, 831-32 (C.A.A.F. 1995).

For the Court



R.H. TROIDL
Clerk of Court

---

[16] The government notes the practical effect of the CA's action and our holding ultimately lead to the same result for the appellant. This opinion and our corrective action, however, are neither illusory nor futile. Here, we again review a case in which a CA follows his or her staff judge advocate's incorrect advice regarding the effect of the Article 60, UCMJ, amendments, now enacted well over two years ago. Even though the error is arguably harmless, we cannot leave a clear violation of the law unaddressed, and thus again exercise our authority to correct it.