# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

―――――――――――

### No. 201700093

―――――――――――

### UNITED STATES OF AMERICA
Appellee

v.

### BRETT D. SCHNEIDER
Sergeant (E-5), U.S. Marine Corps
Appellant

―――――――――――

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel David M. Jones, USMC.
Convening Authority: Commanding Officer, 4th Marine Corps
District, New Cumberland, PA.
Staff Judge Advocate's Recommendation: Lieutenant Colonel Dennis
L. Hager, USMC.
For Appellant: Lieutenant Commander Jeremy J. Wall, JAGC, USN.
For Appellee: Captain Sean M. Monks, USMC; Lieutenant Megan P.
Marinos, JAGC, USN.

―――――――――――

Decided 31 October 2017

―――――――――――

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

―――――――――――

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

―――――――――――

PER CURIAM:

At a special court-martial, a military judge convicted the appellant, pursuant to his pleas, of violating a lawful general order and assault consummated by a battery—violations of Articles 92 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892 and 928. The military judge sentenced the appellant to 89 days' confinement and a bad-conduct

discharge.[1] The convening authority (CA) approved the sentence as adjudged and, except for that part of the sentence extending to the bad-conduct discharge, order it executed. As a matter of clemency, and consistent with the military judge's recommendation, the CA suspended all adjudged confinement in excess of time already served.[2]

The appellant assigns one error: that the staff judge advocate's recommendation (SJAR) was legally defective in advising the CA that he could not suspend the adjudged punitive discharge.

After careful consideration of the record of trial and the pleadings of the parties, we conclude the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant entered into a pretrial agreement (PTA) with the CA that, in exchange for the appellant's pleas of guilty, required the CA to defer and then to suspend all adjudged confinement in excess of 60 days. The PTA provided that any other adjudged sentence, "[m]ay be approved as adjudged."[3] Prior to the CA's action, on 6 January 2017, the appellant's post-trial submission for clemency included a request for the CA to disapprove the punitive discharge and "defer and then suspend any remaining confinement time that Sgt Schneider has not yet served."[4] In both the SJA's 19 January 2017 favorable endorsement of the appellant's deferment request and in the subsequent SJAR of 3 February 2017, the staff judge advocate advised the CA that he may not disapprove, commute, or suspend the sentence of a bad-conduct discharge. On 9 March 2017, the CA took his action and approved the punitive discharge.

## II. DISCUSSION

The appellant avers that the "[m]ay be approved" language in his PTA was intended by the parties to mean that the CA reserved the authority to

---

[1] The military judge recommended the convening authority suspend all adjudged confinement. Record at 124.

[2] The pretrial agreement (Appellate Exhibit III) required the CA to defer and then suspend any adjudged confinement in excess of 60 days. The appellant was in confinement from the date of trial, 19 December 2016, until 26 January 2017.

[3] Appellate Exhibit (AE) III at 1.

[4] SJAR of 3 Feb 2017 at Encl. (2).

disapprove a punitive discharge under the enumerated exception in Article 60(c)(4)(C), UCMJ.[5] We disagree.

"When an appellate issue concerns the meaning and effect of a pretrial agreement, interpretation of the agreement is a matter of law, subject to review under a *de novo* standard." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citation and internal quotation marks omitted).

The National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA)[6] amended Article 60(c)(4), UCMJ, reducing the CA's ability to affect sentences in cases involving most offenses committed on or after 24 June 2014.[7] CAs can no longer "disapprove, commute, or suspend in whole or in part . . . a sentence of dismissal, dishonorable discharge, or bad conduct discharge" unless certain exceptions exist.[8]

Article 60(c)(4), UCMJ, now provides:

> (A) Except as provided in subparagraph (B) or (C), the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge.
>
> . . . .
>
> (C) If a pre-trial agreement has been entered into by the convening authority and the accused . . . the convening authority . . . shall have the authority to approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pre-trial agreement[.][9]

As a result of these changes, the CA's authority to grant the requested clemency in this case was governed by the terms of the PTA. Thus, the issue in this case is limited to whether the CA and the appellant intended for the PTA to preserve the CA's clemency authority under Article 60(c)(4)(C), UCMJ. We have previously found that a CA does not have the authority, under Article 60, UCMJ, to disapprove an appellant's bad-conduct discharge where the PTA required the CA to suspend it. *United States v. Kruse,* 75 M.J. 971, 973 (N-M. Ct. Crim. App. 2016). In *Kruse,* we looked at both the plain

---

[5] Appellant's Brief of 19 Jun 2017 at 6.

[6] Pub. L. No. 113-66, 127 Stat. 672 (2013).

[7] Both offenses to which the appellant was guilty occurred after 24 June 2014.

[8] *Id.* § 1702 at 956.

[9] *Id.* at 956-57.

language of the PTA and whether the appellant understood the terms of the PTA. *Id.* at 974.

## A. Plain language of the PTA

There was nothing unique about the language or terms used in the sentencing limitation portion of the PTA in this case. In fact, the phrase "[m]ay be approved as adjudged" was used in relation to all authorized punishments.[10] Suspension or disapproval of an adjudged punitive discharge is a commonly negotiated provision that often includes some specific qualifying language to convey the parties' understanding of what the CA is authorized to do and what the CA agrees to do. In *Kruse,* the government argued that the inclusion of the phrase "[m]ay be approved as adjudged" and "the language that gave the CA the power to suspend meant that the plain and permissive language of the agreement included the power to disapprove." *Kruse*, 75 M.J. at 973, 974. We concluded that such an interpretation "stray[ed] too far outside the four corners of the contract and the express terms therein[.]" *Id.* at 974. So too here. Absent any evidence on the record to the contrary, we find that use of the phrase "[m]ay be approved as adjudged" does not express an intent on the part of the government or the appellant to create an exemption under Article 60(c)(4)(C), UCMJ.

## B. The appellant's understanding of the PTA

We look to the record as a whole to determine the appellant's understanding of the terms of his PTA. *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F 2006). The military judge is required to ensure an appellant understands the material terms of their PTA, as well as identify any disagreement between the parties over any PTA terms. RULE FOR COURTS-MARTIAL 910(f)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) "We have long emphasized the critical role that a military judge and counsel must play to ensure that the record reflects a clear, shared understanding of the terms of any pretrial agreement between an accused and the convening authority." *United States v. Williams*, 60 M.J. 360, 362 (C.A.A.F. 2004). (citations omitted). Here, upon announcement of sentence, the military judge confirmed the terms of the sentencing provisions of the pretrial agreement with the appellant and counsel.[11] Although succinct, the colloquy consisted of the military judge clearly stating, "[p]unitive discharge may be approved as adjudged. I have ordered a bad-conduct discharge."[12] This was followed by the military judge confirming with counsel and the appellant that all parties

---

[10] AE III at 1.

[11] Record at 124-25.

[12] *Id.* at 124.

understood and agreed to the meaning and effect of the PTA on the sentence adjudged.[13]

We find nothing in the plain language of the PTA, or in the record as a whole, to conclude the appellant or the other parties to the PTA intended to preserve the CA's authority under Article 60, UCMJ, to disapprove an adjudged punitive discharge. Having decided the CA in this case did not have the authority to disapprove the appellant's punitive discharge, the staff judge advocate's advice was not erroneous.

### III. CONCLUSION

The findings and the sentence, as approved by the CA, are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[13] *Id*. at 125.