# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

―――――――――――――

### No. ACM S32471

―――――――――――――

### UNITED STATES
*Appellee*

v.

### Omari N. ROBINSON
Airman (E-2), U.S. Air Force, *Appellant*

―――――――――――――

Appeal from the United States Air Force Trial Judiciary

Decided 15 August 2018

―――――――――――――

*Military Judge:* Tiffany M. Wagner.

*Approved sentence:* Bad-conduct discharge, confinement for 84 days, and reduction to E-1. Sentence adjudged 10 April 2017 by SpCM convened at Buckley Air Force Base, Colorado.

*For Appellant:* Captain Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Cara Condit, USAF; Major Mary Ellen Payne, USAF; Captain Michael T. Bunnell, USAF.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

―――――――――――――

### PUBLISHED OPINION OF THE COURT

―――――――――――――

DENNIS, Judge:

Appellant, pursuant to a pretrial agreement, pleaded guilty to one specification each of wrongful use of marijuana, wrongful possession of marijuana with the intent to distribute, wrongful introduction of marijuana, wrongful distribution of marijuana, and wrongful solicitation of another Airman to unlawfully distribute marijuana, in violation of Articles 112a and

134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 934. Appellant was also convicted, contrary to his pleas, of one specification of wrongful solicitation of another Airman to unlawfully use marijuana in violation of Article 134, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 84 days,[1] and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant submitted his case with one assignment of error: whether Appellant's guilty plea to Charge I, Specification 2, for possession of marijuana with intent to distribute on divers occasions is improvident when the evidence the military judge relied upon proves only a single continuous possession and intent.

The court specified the following issue:

> DOES THE PROVISION OF THE PRETRIAL AGREEMENT REQUIRING THE CONVENING AUTHORITY TO "CONSIDER DISAPPROVING, COMMUTING, MITIGATING, OR SUSPENDING THE ENTIRE SENTENCE OR ANY PORTION THEREOF, AS A MATTER OF CLEMENCY WHEN TAKING ACTION" RENDER THE PLEA IMPROVIDENT OR REQUIRE NEW POST-TRIAL PROCESSING?

We resolve the case based on our specified issue, find the plea improvident, and set aside the findings and sentence. We consequently need not address the issue raised by Appellant.

## I. BACKGROUND

Appellant's journey to the Air Force began at the recommendation of his grandmother, who saw it as an opportunity for him to prosper after a very difficult upbringing in Florida. In February 2016, Appellant enlisted in the Air Force as a space systems operator. After successfully completing basic military and technical school training, Appellant arrived at Buckley Air Force Base (AFB), Colorado, in August 2016. Despite the opportunity foreseen by his grandmother, the Air Force proved to be a difficult place for Appellant.

By October 2016, Appellant had befriended two other Airmen. When one of the Airmen purchased a cannabis-infused candy, specifically, "adult gummy bears," and offered it to Appellant, he accepted. A few months later, the same Airman asked Appellant to purchase marijuana for the friends to share. Appellant then sought marijuana from an Airman who had previously "expressed that he would be able to help [Appellant] with similar things." After

---

[1] The military judge credited Appellant with 84 days of pretrial confinement against the term of his confinement.

having an acquaintance legally obtain "enough marijuana for three joints" at an off-base marijuana dispensary, Appellant drove back to Buckley AFB where he and his friends shared the marijuana over the next three days and Appellant offered to share it with his roommate. For this misconduct, Appellant was charged with wrongful use, possession with the intent to distribute, distribution, introduction, and solicitation.

On 3 April 2017, Appellant entered into a pretrial agreement (PTA), which was signed by Appellant, trial defense counsel, the staff judge advocate (SJA), and the special court-martial convening authority. Appellant agreed to plead guilty to all but one specification[2] in exchange for the convening authority's agreement to approve no more than three months of confinement, disapprove any adjudged hard labor without confinement, and "[c]onsider disapproving, commuting, mitigating, or suspending the entire sentence or any portion thereof, as a matter of clemency when taking Action." The convening authority also agreed to withdraw and dismiss a specification of communicating a threat in violation of Article 134, UCMJ.

The military judge discussed each provision of the PTA with Appellant prior to accepting his guilty plea. On the provision at issue, the military judge had the following colloquy with Appellant:

> MJ [Military Judge]: And that also, that the convening authority will consider disapproving, commuting, mitigating or suspending the entire sentence or any portion thereof as a matter of clemency when taking action.
>
> And you understand what that means?
>
> ACC [Appellant]: Yes, ma'am.
>
> MJ: It doesn't mean that he has to, but he will consider doing it. Do you understand that?
>
> ACC: Yes, ma'am.

The military judge neither inquired further into Appellant's or either counsel's understanding of this provision nor clarified the ways in which the convening authority would be limited by the restrictions set forth in Article 60, UCMJ, 10 U.S.C. § 860. The military judge ultimately accepted Appellant's

---

[2] Appellant did not offer to plead guilty to one specification of wrongful solicitation of another Airman to unlawfully use marijuana. Appellant agreed to enter into a reasonable stipulation of fact and to waive his right to members, the production of expert consultants for the findings or sentencing, the travel of any witness for the findings or sentencing phases of trial, and all motions that may be waived under the Rules for Courts-Martial.

guilty plea without objection from trial or defense counsel. At the conclusion of trial, the military judge confirmed that Appellant had been advised of his post-trial and appellate rights by trial defense counsel. The written rights advisement was included in the record as an appellate exhibit and stated, in relevant part, the following language: "After the record of trial is prepared, the Convening Authority will act on your case. The Convening Authority may approve the sentence adjudged, approve a lesser sentence, or disapprove the sentence entirely."

During the post-trial processing of Appellant's case, the SJA advised the convening authority, "you do not have the authority to disapprove, commute or suspend in whole or in part the punitive discharge. You do have the authority to disapprove, commute or suspend in whole or in part the confinement, forfeitures and/or reduction in rank." Conversely, trial defense counsel's clemency memorandum to the convening authority stated that the convening authority could "modify" Appellant's "reduction in rank and/or bad conduct discharge."[3] Appellant himself made only one request in his clemency petition to the convening authority: that the convening authority "consider upgrading his BC [bad-conduct] discharge." Neither the SJA nor trial defense counsel informed the convening authority that he was bound by the PTA to "consider disapproving, commuting, mitigating, or suspending the entire sentence or any portion thereof, as a matter of clemency when taking Action."

## II. DISCUSSION

At issue in this case is the agreed upon provision requiring the convening authority to "[c]onsider disapproving, commuting, mitigating, or suspending the entire sentence or any portion thereof, as a matter of clemency when taking Action." Appellant argues that his misunderstanding of this provision—hereafter referred to as the "consideration provision"—rendered his plea improvident. We agree with Appellant for two reasons. First, we find that the consideration provision as explained to Appellant was inconsistent with Article 60, UCMJ, and thus a legal nullity. Second, we find that the consideration provision was a material term of the PTA.

### A. Validity of the PTA's Consideration Provision

The interpretation of a PTA is a question of law, which we review de novo. *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009); *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). "We begin our analysis of the pretrial agreement by looking first to the language of the agreement itself."

---

[3] Because of our disposition of this case, we do not address whether the conflict between the SJA's advice to the convening authority and the trial defense counsel's clemency memorandum requires new post-trial processing in accordance with *United States v. Addison*, 75 M.J. 405 (C.A.A.F. 2016).

*Acevedo*, 50 M.J. at 172. At the core of the consideration provision is the question of whether the convening authority had the power to take the action promised in the consideration provision. A convening authority's power to take action on an adjudged sentence is governed by Article 60, UCMJ, which we must separately interpret de novo. *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014). "The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *McPherson*, 73 M.J. at 385 (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)).

Congress significantly changed the statutory scheme in Article 60, UCMJ, through the National Defense Authorization Act for Fiscal Year 2014. *See* Pub. L. No. 113–66, § 1702, 127 Stat. 954–958 (2013) (codified at 10 U.S.C. § 860(c)(4)(A)). What had been authority "to modify the findings and sentence of a court-martial [a]s a matter of command prerogative involving the sole discretion of the convening authority" became limited power to make only certain modifications under a restricted set of circumstances. Article 60(c)(4)(A), UCMJ, now provides that "the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge." 10 U.S.C. § 860(c)(4)(A). Congress set forth only two narrow exceptions to these limitations:

> . . . Upon the recommendation of the trial counsel, in recognition of the substantial assistance by the accused in the investigation or prosecution of another person who has committed an offense, the convening authority . . . shall have the authority to disapprove, commute, or suspend the adjudged sentence in whole or in part. . . .

> . . . If a pre-trial agreement has been entered into by the convening authority and the accused, as authorized by Rule for Courts-Martial 705, the convening authority . . . shall have the authority to *approve, disapprove, commute, or suspend* a sentence in whole or in part pursuant to the terms of the pre-trial agreement . . . .[4]

10 U.S.C. §860(c)(4)(B)–(C) (emphasis added).

---

[4] The remaining portion of Article 60(c)(4)(C) sets forth further restrictions in cases involving a mandatory minimum sentence. That portion of the statute is inapplicable here, as Appellant was not subject to a mandatory minimum sentence.

The plain language of Article 60(c)(4)(C), UCMJ, provides a convening authority the power to take only four types of action regarding an appellant's sentence pursuant to a PTA: approve, disapprove, commute, or suspend. In Appellant's case, the convening authority agreed to take three types of action regarding Appellant's sentence: to *approve* no more than three months confinement; to *disapprove* a sentence to hard labor without confinement; and to *consider* taking other actions.

In light of the specified actions authorized by Article 60(c)(4)(C), UCMJ, it is unclear what authorized action the parties purported to agree upon through the consideration provision. The Government argues that the provision should be "read disjunctively" to apply only to those actions that the convening authority had the power to take under Article 60, UCMJ, with or without a PTA.[5] We find the Government's argument legally and logically flawed.

The Government's argument is legally flawed because a "disjunctive reading" of the consideration provision fails to account for the most fundamental requirement of a PTA: an accused's understanding of the agreement. We have long charged military judges with ensuring an accused understands and agrees to the terms of a PTA. Rule for Courts-Martial (R.C.M.) 910(f)(4). Here, when Appellant entered into the PTA, he believed the convening authority had the power to disapprove the entire sentence, including a bad-conduct discharge if adjudged. The military judge did little to clarify Appellant's understanding when she advised him that the consideration provision "doesn't mean that he [the convening authority] has to, but he will consider doing it." Likewise, trial defense counsel advised Appellant that the convening authority could disapprove the entire sentence.

---

[5] The Government asserts that it complied with both the limitations set forth in Article 60(c)(4)(A), UCMJ, and the consideration provision.

> The government does not concede non-compliance with the plain language of "the consideration provision." The provision requires the convening authority to "consider disapproving, commuting, mitigating, or suspending the entire sentence or any portion thereof, as a matter of clemency when taking Action." [. . .] This provision could, with equal linguistic justification, be read disjunctively—offering discretion to the convening authority. In other words, so long as the convening authority "considered disapproving, commuting, mitigating, or suspending . . . any portion" of the adjudged sentence, then his duty was properly discharged. There were portions of the sentence, e.g. reduction in rank, for which the convening authority could consider providing relief— though he decided against it. Thus, the [G]overnment was compliant with "the consideration provision" of the PTA[.]

The Government's argument is logically flawed because including a provision that required the convening authority to consider taking an action he had no power to take would serve no purpose. The futility of such a provision is compounded by the fact that the convening authority was already required to consider Appellant's clemency submission. R.C.M. 1107(b)(3)(iii). The record is void of any evidence from the trial itself that the consideration provision was meant to be read disjunctively. We therefore decline to apply such an interpretation.

We instead focus our analysis where it belongs: the plain language of Article 60(c), UCMJ. Under the statute, the convening authority did not have the power to comply with the consideration provision as Appellant understood it unless one of the two exceptions, substantial assistance or PTA, applied. We find neither exception applicable to Appellant's case. First, there is no evidence that trial counsel submitted a recommendation in recognition of substantial assistance by Appellant, which would qualify him for clemency under the exception set forth in Article 60(c)(4)(B), UCMJ. Second, the exception set forth in Article 60(c)(4)(C), UCMJ, authorizes a convening authority only to "approve, disapprove, commute, or suspend" an adjudged sentence pursuant to the terms of the PTA. We find this language unambiguous. If the consideration provision was intended to make Appellant eligible for clemency under the PTA exception, it failed to do so.

Because the word "consider" is absent from the list of the four authorized actions in Article 60(c)(4)(C), UCMJ, such a term in a PTA creates no exception to the general limitation on the convening authority's clemency powers. *See* Article 60(c)(4)(A), UCMJ. We will not read into the statute more than the plain language of the words used. *See United States v. Kruse*, 75 M.J. 971, 975 (N-M. Ct. Crim. App. 2016) (finding no "clear expression of Congressional intent permitting a [convening authority] to take action inconsistent with the law or plain terms of a pretrial agreement"); *see also United States v. Berry*, No. ACM 39183, 2018 CCA LEXIS 128, at *13–14 (A.F. Ct. Crim. App. 12 Mar. 2018) (unpub. op.) ("Congress created an unambiguous limitation on the convening authority's power to grant the requested clemency: that the power exists only '[u]pon the recommendation of the trial counsel.'") (quoting 10 U.S.C. § 860(c)(4)(B)). To hold otherwise would allow a convening authority to essentially rewrite legislation in the form of a PTA provision.

In light of the limitations set forth in Article 60(c)(4)(A), UCMJ, the convening authority's agreement to "consider disapproving, commuting, mitigating, or suspending the entire sentence or any portion thereof, as a matter of clemency when taking Action" was in essence an empty promise. By unknowingly bargaining for a possibility that never existed, Appellant did not

freely and voluntarily enter into the PTA. As a result, the PTA cannot be enforced.

## B. Materiality of the PTA's Consideration Provision

We must next determine what if any remedy is appropriate. We begin by assessing the effect of this invalid provision on the providence of Appellant's pleas. Put another way, was the consideration provision a material term of the PTA? We find that it was.

An accused is entitled to the benefit of the bargain on which his guilty plea is based. *See United States v. Williams*, 53 M.J. 293, 295 (C.A.A.F. 2000); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). Whether a term is material to the agreement "depends upon the circumstances of the case." *United States v. Smith*, 56 M.J. 271, 273 (C.A.A.F. 2002). Two circumstances lead to our conclusion that the consideration provision was a material term of Appellant's PTA.

First, Appellant said that it was. In a declaration submitted to the court, Appellant averred:

> My greatest concern heading into trial was that I would get a punitive discharge-something that would stick with me the rest of my life and affect my ability to find work. Even though I couldn't work out a pretrial agreement that took away the possibility of a punitive discharge, I accepted the pretrial agreement because I thought the Convening Authority could disapprove the punitive discharge as being excessive if the military judge gave me one.

Second, Appellant made only one clemency request: that the convening authority disapprove his bad-conduct discharge. Appellant's request was echoed by his trial defense counsel, who submitted a separate memorandum asking the convening authority to disapprove Appellant's bad-conduct discharge.

Citing language from Appellant's clemency submission, the Government argues that the consideration provision did not influence Appellant's decision to plead guilty. Specifically, the Government points to Appellant's post-trial assertion that he "would've plead[ed] guilty without a pretrial agreement or safety net because it was the right thing to do." We are not persuaded. The statement upon which the Government so heavily relies was made in the context of Appellant's attempt to convince the convening authority to "upgrade [Appellant's] BC discharge." Appellant was trying to make the case that, by pleading guilty, he had demonstrated his willingness to take responsibility for

his misconduct. We will not read into his request to the convening authority an unwitting waiver of the benefit of his bargain.

> Where, as here, an accused pleads guilty relying on incorrect advice from his attorney on a key part of the pretrial agreement . . . and the military judge shares that misunderstanding and fails to correct it, a plea can be held improvident. Ignorance of the law on a material matter cannot be the prevailing norm in the legal profession or in the court-martial process.

*Williams*, 53 M.J. at 296.

The circumstances of Appellant's case drive us to only one conclusion: Appellant entered into the PTA because he believed the convening authority had the power to grant the only relief he sought, disapproval of the bad-conduct discharge. Appellant did not receive the benefit of his bargain. Accordingly, we find the PTA unenforceable and Appellant's guilty plea improvident. We are thus compelled to set aside the findings of guilt on the offenses to which Appellant pleaded guilty.

## C. Contested Specification and Forum Selection

As a final matter, we discuss the impact of our holding on the specification Appellant contested. Appellant's PTA contained a provision that he waive his "right to a trial by qualified court-martial members (to include enlisted members) and agree to trial by military judge alone." When discussing Appellant's waiver in the context of Appellant's guilty plea, the military judge asked Appellant whether his request for trial by judge alone was pursuant to the PTA. Appellant responded in the affirmative.

The validity of forum selection is a question of law we review de novo. *United States v. St. Blanc*, 70 M.J. 424, 427 (C.A.A.F. 2012). R.C.M. 903(c) "protects the forum selection right codified in Article 16, UCMJ, by ensuring that an accused's waiver of the right to trial by members is knowing and voluntary." *Id.* (citing 10 U.S.C. § 816). In *St. Blanc*, the court found that a change in the maximum sentence while the appellant's case was on direct appeal did not render his forum selection for trial by military judge invalid. In doing so, the United States Court of Appeals for the Armed Forces noted that "[w]hile there are myriad reasons an accused may choose one forum over another, R.C.M. 903 does not require that a military judge inquire into any non-enumerated factor or collateral matters that may have influenced the accused's election." *Id.* at 429–30. Here, unlike the record in *St. Blanc*, the record in Appellant's case makes clear the reason Appellant made his forum selection: Appellant's request for trial by military judge alone was made pursuant to the term of the PTA requiring he do so.

Because Appellant's choice of forum was made pursuant to the PTA we have found to be unenforceable, we find—under the facts of this case—that Appellant's forum choice was not knowing and voluntary as to the contested specification, and we set aside the military judge's finding of guilty as to that specification. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c).

### III. CONCLUSION

The findings of guilt and the sentence are hereby **SET ASIDE**. A rehearing is authorized. Article 66(e), UCMJ, 10 U.S.C. § 866(e).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court