UNITED STATES, Appellee

v.

William T. LUNDY, Staff Sergeant
U.S. Army, Appellant

No. 03-0620

Crim. App. No. 20000069

United States Court of Appeals for the Armed Forces

Argued March 21, 2006

Decided July 18, 2006

BAKER, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD and ERDMANN, JJ., joined.  EFFRON, J., filed
a separate opinion concurring in part and in the result.

Counsel

For Appellant:  Captain Seth A. Director (argued); Colonel John
T. Phelps II, Colonel Mark Cremin, Lieutenant Colonel Kirsten V.
C. Brunson, Lieutenant Colonel Mark Tellitocci, Major Charles A.
Kuhfahl Jr., Captain Charles L. Pritchard Jr., and Captain
Jeremy W. Robinson (on brief); Major Sean S. Park.

For Appellee:  Major William J. Nelson (argued); Lieutenant
Colonel Theresa A. Gallagher (on brief); Colonel Steven T.
Salata and Captain Flor M. Suarez.


Military Judge:  William T. Barto


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Lundy, No. 03-0620/AR

Judge BAKER delivered the opinion of the Court.

On January 27, 2000, Appellant was convicted in accordance with his pleas of forcible sodomy with a child under the age of twelve, forcible sodomy with a child under the age of sixteen, and six specifications of indecent acts with a child under the age of sixteen in violation of Articles 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 934 (2000). He was convicted contrary to his pleas of attempted carnal knowledge with a child under the age of twelve and attempted indecent acts with a child over the age of sixteen in violation of Article 80, UCMJ, 10 U.S.C. § 880 (2000). The adjudged sentence included a dishonorable discharge, confinement for twenty-three years and reduction to the lowest enlisted grade (E-1). The sentence approved by the convening authority included a dishonorable discharge and confinement for eighteen years. He also approved the reduction to E-1, but waived the mandatory forfeitures under Article 58b, UCMJ, 10 U.S.C. § 858b (2000). This case is on appeal to this Court a second time.[1]

Appellant's pretrial agreement included a commitment from the convening authority on behalf of the United States to "defer

_____

[1] See United States v. Lundy (Lundy II), 60 M.J. 52 (C.A.A.F. 2004) (this Court reversing and remanding); United States v. Lundy (Lundy III), 60 M.J. 941 (A. Ct. Crim. App. 2005)(on remand, lower court affirming findings of guilty and sentence); United States v. Lundy (Lundy I), 58 M.J. 802 (A. Ct. Crim. App. 2003) (lower court affirming findings of guilty and sentence).

2

any and all reductions and forfeitures, until sentence is approved, suspend any and all adjudged and waive any and all automatic reductions and forfeitures and pay them to [Appellant's] wife to the full extent of the law." The question presented on this appeal is whether the timing of the Government's execution of this term was material to the agreement and therefore to Appellant's decision to plead guilty. If so, Appellant argues that under United States v. Perron, 58 M.J. 78 (C.A.A.F. 2003), he is entitled to withdraw his plea as improvident.

### BACKGROUND

After the trial, the convening authority deferred the adjudged reduction in grade and the mandatory forfeitures that would have taken effect under Article 58b, UCMJ. However, the convening authority did not suspend or waive "any and all adjudged . . . [and] automatic reductions and forfeitures." In light of an Army regulation that precluded suspending a mandatory reduction in grade unless a convening authority also suspended any related confinement or punitive discharge, the convening authority did not suspend Appellant's mandatory reduction. Dep't of the Army, Reg. 600-8-19, Personnel-General: Enlisted Promotions and Reductions para 7-1d (May 1, 2000). Consequently, upon the convening authority's action, Appellant was automatically reduced from grade E-6 to E-1. In turn,

3

Appellant's wife received payments based on the rate of pay of an E-1 rather than that of an E-6.  Thus, Appellant's wife received some of what was bargained for on her behalf, but not all.

In Lundy II, because the United States Army Court of Criminal Appeals in Lundy I determined that the provision at issue here was a material term, we remanded to that court to determine:  (a) whether specific performance was possible; and if not (b) whether there were viable options for alternative relief under Perron.  60 M.J. at 60.  However, in light of our conclusion in Perron that the government cannot impose alternative relief on an unwilling appellant to satisfy a material term in a pretrial agreement, we also ordered the lower court to determine whether the timing of any payments was material to the pretrial agreement.  Id. at 60-61.

In Lundy III, the Court of Criminal Appeals determined on remand that specific performance was available.  60 M.J. at 944. It further concluded that "[a]lthough appellant argues that specific performance at this late date is, in actuality, a form of alternative relief because the timing of payments is a material provision of his pretrial agreement, he has failed to demonstrate such materiality."  Id.  The lower court noted that following Lundy II, the Secretary of the Army's designee authorized the convening authority to suspend Appellant's

4

United States v. Lundy, No. 03-0620/AR

automatic reduction without the requirement of also suspending the related confinement and punitive discharge.  Id. at 943. Further, after the lower court's determination in Lundy III, the Defense Finance and Accounting Service made payment to Appellant's wife in October 2005 in the amount of the difference between the E-1 rate and the E-6 rate of pay for six months with interest.  At this point, Appellant received the monetary benefit of his bargain.  However, Appellant now renews his claim that the timing of payments at the E-6 rate for the six-month period following the convening authority's action "played a large part in his decision to enter into the pretrial agreement," and thus his plea was improvident.

## DISCUSSION

A pretrial agreement is a contract between the accused and the convening authority.  See United States v. Acevedo, 50 M.J. 169, 172 (C.A.A.F. 1999).  Therefore, "we look to the basic principles of contract law when interpreting pretrial agreements."  Id.  However, a pretrial agreement is a constitutional rather than a commercial contract.  Typically, an accused foregoes his or her constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by members, and the right to confront witnesses against him in exchange for a reduction in sentence or other benefit. Perron, 58 M.J. at 81.  As a result, when interpreting pretrial

5

agreements, "contract principles are outweighed by the Constitution's Due Process Clause protections for an accused." Acevedo, 50 M.J. at 172. In a criminal context, the government is bound to keep its constitutional promises, whereas in a commercial context it might accept the financial consequences of breach. Thus, financial remedies are not necessarily an appropriate or available remedy for breach of a plea agreement. The right to confrontation, for example, is not redeemable for interest.

Interpretation of a pretrial agreement is a question of law, which we review de novo. Id. Whether the government has complied with the material terms and conditions of an agreement presents a mixed question of law and fact. Hometown Financial, Inc. v. United States, 409 F.3d 1360, 1369 (Fed. Cir. 2005); Gilbert v. Dep't of Justice, 334 F.3d 1065, 1071 (Fed. Cir. 2003). Generally courts look to all of the facts and circumstances for this determination, and the inquiry is generally considered a question of fact. Singer v. West Publ'g Corp., 310 F. Supp. 2d 1246, 1253 (S.D. Fla. 2004). In the context of pretrial agreements involving the constitutional rights of a military accused, we look not only to the terms of the agreement, or contract, but to the accused's understanding of the terms of an agreement as reflected in the record as a whole. Where, as here, the relevant facts are undisputed, the

materiality determination necessarily reduces to a question of law. Gilbert, 334 F.3d at 1072; United States v. Green, 1 M.J. 453, 456 (C.M.A. 1976).

An appellant bears the burden of establishing that there is a significant basis in law or fact to overturn a guilty plea. United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991); United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002). Thus, in this context, Appellant bears the burden of establishing that a term or condition of the agreement was material to his decision to plead guilty, that the Government failed to comply with that term or condition, and therefore, that his plea was improvident.

The term in dispute obligated the convening authority to "suspend any and all adjudged and waive any and all automatic reductions and forfeitures, and pay them to [Appellant's] wife to the full extent of the law." The agreement is silent as to the timing of performance. However, by law this event could not occur sooner than the convening authority's action. As a matter of practice, and in the absence of a contrary agreement, such waivers of forfeitures and suspensions are ordinarily executed at the time of the convening authority's action. Article 57, UCMJ, 10 U.S.C. § 857 (2000).

The record reflects the following additional facts:

Appellant was sentenced on January 27, 2000.

7

> The convening authority deferred enforcement of automatic forfeitures until he could act on the sentence.
>
> The convening authority took action on May 26, 2000, but did not waive or suspend the automatic reduction because of provisions contained in a departmental regulation.
>
> For the six-month period following the convening authority's action, Appellant's wife received the benefit of the waived forfeitures at the E-1 rate. She also received $6,845 of transitional compensation for this same period of time.
>
> In March of 2001, Appellant became aware of the fact that his wife had only received the reduced benefit.
>
> On June 19, 2003, the Court of Criminal Appeals issued its first opinion in this case upholding the convening authority's action in not waiving or suspending the automatic reduction. (Lundy I.)
>
> On June 24, 2004, this Court issued its opinion remanding to the lower court for a determination on the issue of specific performance. (Lundy II.)
>
> On January 3, 2005, the convening authority received an exception to the departmental regulation, which allowed him to suspend the automatic reduction previously approved in his prior action.
>
> On March 10, 2005, the Army Court of Criminal Appeals issued its second opinion in the case. (Lundy III.)
>
> On October 7, 2005, Appellant's wife received the remainder of the benefit due her under the pretrial agreement, i.e., the difference between the E-1 and E-6 rate of pay for six months with interest.

This is a difficult case, in part, because there is an absence of information as to the relevance of timing at the time the agreement was concluded. In the abstract, the absence of any discussion during the plea inquiry regarding timing would

8

seem to support a conclusion that the timing of the payments was not a material condition to the agreement.  However, as noted above, in the ordinary course of military practice the suspension or waiver of "any and all reductions and forfeitures" would ordinarily occur at the time of the convening authority's action.  Thus, absent language to the contrary, we think it fair to imply as a term of Appellant's agreement that it was contemplated that the waived forfeiture of pay at the E-6 rate was to accrue to Appellant's wife at the time the convening authority acted and that he could expect that this would happen at the time he pled guilty.

In our view, this is Appellant's strongest argument that the term was material to his decision to plead guilty.  The purpose behind the waiver of forfeitures is to provide for an accused's dependents.  The law requires that dependents receive such waived forfeitures.  Article 58b, UCMJ.  It is intuitive that military members would want their dependents to benefit from the present value of any waiver of forfeitures.  However, the law also provides, in context, for transitional assistance to the abused dependents of a servicemember convicted at court-martial.  Dep't of Defense, Instr. 1342.24, Transitional Compensation for Abused Dependents para. 2.2.3. (May 23, 1995, Administrative Reissuance Incorporating Change 1, Jan. 16, 1997).  As a result, it is not necessarily the case that an

accused's agreement to plead guilty in exchange for a waiver of forfeitures and suspension of reductions is intended to provide for the immediate financial needs of a member's dependents as opposed to contributing to the dependents' intermediate or longer term financial needs. More to the point, timing would always be a material condition to an agreement to waive forfeitures and reductions, absent contrary language. This was neither the lower court's conclusion in this case, nor this Court's conclusion in Perron.

In Perron, we looked beyond the terms of the agreement, to the record as a whole, for evidence that the timing of execution of the agreement's financial terms was material to the accused's decision to plead guilty. 58 M.J. 85. Thus, in Perron, we drew from defense counsel's colloquy with the military judge stating that the appellant's specific understanding was that the suspension of forfeitures would provide financial support during his sixty-day period of confinement. See id. When this did not occur, Perron went into a no-pay status and his family received no money. See id. Defense counsel then sent a clemency request to the convening authority stating "Please consider BM2 [Boatswain's Mate Second Class] Perron's family in this matter. The family cannot survive financially without the aid of BM2 Perron." Id. at 79. Further, defense counsel then requested that the convening authority grant relief from the pay

provisions or immediately release Perron from jail in order to gain immediate employment and provide financial relief for his family.  Id.

Appellant has not met his burden of establishing similar evidence that timing was material in this case.  The following factors while not determinative, inform this conclusion.

First, the pivotal clause in the plea agreement contained the phrase "to the full extent of the law."  This suggests emphasis on the amount of payment and not necessarily the speed or timing of payment.  "To the full extent of the law" is a term of art designed to maximize payment, but not necessarily expedite process.  The term implicitly concedes that the parties are not in agreement, or have yet to conclude, the specific parameters of the agreed-upon benefit.

This conclusion is supported by the military judge's inquiry into this term during the providence inquiry:

> MJ:  What does "To the full extent as allowed by law" mean, [defense counsel]?
>
> DC:  Sir, as I understand the state of the law right now, that would be six months from the approval.  However, sir, I wanted it to be to the full extent of the law because it may change, sir.
>
> MJ:  The law may change.
>
> DC:  But I believe it's six months.
>
> MJ:  Government concur?

> TC:  Sir, the government's belief is that it's six months. That's correct.

Defense counsel's response emphasizes the duration of payment, rather than the immediacy or timing of payment, and both counsel reflect uncertainty as to the scope of the law.

In Lundy II, we observed that the regulatory impediment precluding the convening authority from suspending the reduction resulted from a departmental action rather than a statutory mandate.  60 M.J. at 58.  As such, the Army was free to modify the regulation, create an exception, or grant a waiver.  Id. But such steps, even if immediately pursued, could take substantial bureaucratic time.  This undercuts Appellant's argument that the immediacy of the payments was material to his decision to plead guilty.

Second, the waiver of forfeitures in Appellant's agreement accrued to the benefit of a third party, in this case, Appellant's wife.  Regarding this third-party benefit, the convening authority began performance when he deferred the forfeitures and reduction immediately after the trial.  Since the convening authority's ultimate action failed to suspend any reduction, the result was an incomplete or partial performance of the promises that would complete the benefit to Appellant's wife.

12

However, Appellant has not demonstrated that the third-party beneficiary complained. More importantly, because the constitutional bargain was with Appellant and not his wife, the record reflects that Appellant was not aware until March 2001, that his wife did not receive the full benefit of his bargain. Thus, unlike the situation in Perron, here Appellant did not complain about the convening authority's failure to act until some thirteen months after the fact. Perron, 58 M.J. 79-80. This negates Appellant's assertion that the timing of the payments was material to his decision to plead guilty because Appellant appears not to have been concerned whether or not his wife had received the benefit of the agreement at the time it was due.

During the appellate process, Appellant submitted several affidavits, which were considered by the court below. See Lundy I, 58 M.J. at 807 n.12; Lundy III, 60 M.J. at 942-43. In the affidavit of October 22, 2004, Appellant suggests that the belated payment to his wife of the difference between E-1 and E-6 pay is no longer of value to his family. He claims that his wife has left him for another man and attributes this, in part, to "the need for additional support which had been denied them by the actions taken in regards to my pay." He further indicates that his daughter (the victim of his offenses) intends on moving out of the household with his wife to live with

Appellant's mother.  Appellant's logic is that any benefit provided his wife at this point would not benefit his daughter. This may be the case.  However, the appellate question is not whether circumstances have changed such that Appellant's family might benefit less from the terms of the agreement, but whether at the time of the agreement, the condition now in dispute was material to his decision to plead guilty.

To return to where we began our analysis, these factors do not demonstrate that timing was necessarily irrelevant to Appellant's decision to plead guilty.  But in light of these facts, Appellant has not met his burden of demonstrating that the timing of the payment to his wife of the difference between the two pay grades with interest was material to his agreement to plead guilty.  Therefore, we agree with the Court of Criminal Appeals that the belated payment to Appellant's wife is not alternative relief, but constitutes specific performance of the original pretrial agreement.

DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Lundy, No. 03-0620/AR

EFFRON, Judge (concurring in part and in the result):

I agree with the majority that Appellant has failed to carry the burden of demonstrating that there is a significant basis in law to overturn his plea.  I write separately to focus on the Government's offer to provide full payment plus interest to cover the delay in the payment that is the subject of the present appeal.  Appellant has failed to demonstrate that the Government's offer does not constitute an adequate remedy under the circumstances of this case.

As the majority notes, it is "fair to imply as a term of Appellant's agreement that it was contemplated that the waived forfeiture of pay at the E-6 rate was to accrue to Appellant's wife at the time the convening authority acted and that Appellant could expect that this would happen at the time he pled guilty."  United States v. Lundy, 63 M.J. __, __ (9) (C.A.A.F. 2006).  "It is intuitive that military members would want their dependents to benefit from the present value of any waiver of forfeitures."  Id. at __ (9).

In that context, factors such as the availability of transitional compensation and the request for payments "to the full extent of the law," see id. at __ (9-11), do not demonstrate that Appellant contemplated that the agreement would permit delayed payments at the E-6 level.  Such factors underscore that financial assistance to the family was a

significant factor in the decision to plead guilty, but do not reflect that the parties contemplated a significant delay in the timing of the agreed-upon payments.  While there may be cases in which the availability of transitional compensation and possibility of changes in the law would permit us to discount the importance of timing, the record here does not demonstrate that this is such a case.

By its actions, the Government has recognized that timing was an important component of the agreement.  The Government has agreed not only to provide the full payment at the E-6 level, but it has also agreed to pay interest to remedy the untimely payment.  Interest payments are a classic means of compensating one party for the other party's delay in making payments.  Restatement (Second) of Contracts § 354(1) (1981).  In that light, we may proceed on the basis that immediate payments were contemplated by Appellant, but that does not resolve the question of whether the delay requires nullification of the agreement.

There are a number of ways to address the government's failure to perform its responsibilities under a plea agreement:

(1) Require specific performance by the government or permit withdrawal from the agreement.  See United States v. Perron, 58 M.J. 78, 84 (C.A.A.F. 2003) (citing Santobello v. New York, 404 U.S. 257, 263 (1971)).

(2) Provide for alternative relief, with the consent of the Appellant.  See id. at 86 (holding that an alternative remedy may not be imposed on an unwilling defendant).

(3) Provide an adequate remedy to cure the material breach of the agreement.  See, e.g., United States v. Garcia, 698 F.2d 31, 37 (1st Cir. 1983) (resentencing defendant to time already served where other remedies would be meaningless or infeasible); Cooper v. United States, 594 F.2d 12, 20-21 (4th Cir. 1979) (ordering specific enforcement "to the extent possible" of a plea proposal withdrawn by the government, where the lapse of time and intervening circumstances compelled the court to disregard some obligations of the government and defendant).

The term "specific performance" does not require the government to comply with each literal detail of the agreement when there is an adequate remedy.  As we noted in Perron, "[w]here the failed term in the agreement involves pure economic concerns, finding relief of equal value is possible."  58 M.J. at 85.  Even when the term of an agreement involves a non-economic benefit, literal performance is not necessarily required if the level of performance possible at a later date constitutes an adequate remedy.  See, e.g., Garcia, 698 F.2d at 37; Cooper, 594 F.2d at 20-21.  In that regard, there is a distinction between:  (1) alternative relief, which involves creation of a new agreement requiring the consent of the

parties; and (2) an adequate remedy, which does not require any further agreement.

When the issue on appeal involves delayed timing of performance by the government, the question of whether belated performance constitutes an adequate remedy must be assessed on a case-by-case basis. The common law of contracts provides an important source of authority in this regard. The Restatement (Second) of Contracts, states that among the factors to be considered in assessing the adequacy of a remedy proposed to cure a contractual breach are the extent to which the breach may deprive a party of an expected benefit, whether a party can be adequately compensated for the lost benefit, the likelihood that the breaching party will perform a remedy, the breaching party's adherence to standards of good faith and fair dealing, and whether delay precludes reasonable substitute arrangements. Restatement (Second) of Contracts, §§ 241, 242 (1981). Contract law, however, is helpful but not determinative. The ultimate assessment must also reflect due process considerations. <u>See</u> <u>Perron</u>, 58 M.J. at 85-86 (stating that the remedy for a material breach of a pretrial agreement must corroborate the voluntariness of the guilty plea).

In <u>Perron</u>, the lower court concluded that the timing of the payments was addressed on the face of the agreement. 58 M.J. at 85. In that context, with the breach of the agreement as to

timing at issue, we concluded that the government's offer of belated payments plus interest could not be treated as specific performance, but instead amounted to alternative relief, which could be substituted only with the consent of the appellant. See id. at 85-86.

In the present case, the agreement on its face does not address timing. Our prior decision in this case expressly left open the question of whether a belated payment could constitute specific performance. United States v. Lundy, 60 M.J. 52, 60-61 (C.A.A.F. 2004) (remanding to determine whether a delayed implementation of a suspension would be considered specific performance). Here, the agreement focused on the provision of financial benefits to his dependents. In this context, Appellant must not only show the adverse effects of belated payments -- a matter addressed in his filings with our Court -- but he must also demonstrate that full payments plus interest would not provide an adequate remedy.

Appellant's dependents can now receive a substantial sum of money from the Government, including interest covering the time during which payments were delayed. Appellant has failed to demonstrate that the payment of substantial sums to his dependents, at this time, would not constitute an adequate remedy for the Government's breach. Accordingly, he has not met

his burden of showing that there is a significant basis in law for overturning his plea.