# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

### No. 201600306

_____

### UNITED STATES OF AMERICA
Appellee

v.

### CHASE R. BARRY
Lance Corporal (E-3), U.S. Marine Corps
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Elizabeth A. Harvey, USMC.
Convening Authority: Commanding Officer, Marine Aviation
Logistics Squadron 16, MCAS Miramar, San Diego, CA.
Staff Judge Advocate's Recommendation: Captain John A. Cacioppo,
USMC.
For Appellant: Commander Robert D. Evans, Jr., JAGC, USN.
For Appellee: Lieutenant Megan P. Marinos, JAGC, USN;
Lieutenant Robert J. Miller, JAGC, USN.

_____

Decided 28 December 2017

_____

Before HUTCHISON, FULTON, and SAYEGH, _Appellate Military Judges_

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

FULTON, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, consistent with his pleas, of one specification of disobeying a lawful general regulation, and one specification each of wrongful distribution, use, and manufacture of a controlled substance, in violation of Articles 92 and

112a, Uniform Code of Military Justice (UCMJ).[1] The military judge sentenced the appellant to 12 months' confinement, reduction to paygrade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence and, in accordance with a pretrial agreement (PTA), suspended confinement in excess of seven months.

The appellant raises two assignments of error (AOEs). We find that no error materially prejudiced the appellant's substantial rights and we affirm.

## I. BACKGROUND

In exchange for a favorable PTA, the appellant assisted the government investigation and prosecution of service members suspected of wrongfully using controlled substances. The appellant's first AOE alleges that the government did not keep its end of the PTA. The second AOE alleges that the staff judge advocate's recommendation (SJAR) was insufficient because it contained errors and did not sufficiently address allegations of legal error raised by the appellant. The facts necessary to resolve these AOEs are set forth below.

## II. DISCUSSION

### A. Alleged violation of the PTA

The appellant alleges that he was prejudiced by the government's failure to perform its obligations under the PTA. While we agree that the government's performance was not perfect, we find that the appellant was not prejudiced by any of the government's failures.

A PTA is a contract between the accused and the CA.[2] Whether the government has complied with the material terms and conditions of an agreement presents a mixed question of law and fact.[3] Because an appellant must demonstrate that there is a significant basis in law or fact to overturn his guilty plea, it falls on the appellant to show that a PTA term was material to his decision to plead guilty.[4] If the government breaches a material term in a PTA, we may do one of four things: (1) permit the appellant to withdraw from the PTA; (2) require specific performance; (3) provide alternative relief with the appellant's consent; or (4) provide an adequate remedy to cure the material breach of the PTA.[5]

---

[1] 10 U.S.C. §§ 892 and 912a (2012).

[2] *See United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999).

[3] *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006).

[4] *Id.* at 301-02.

[5] *Id.* at 305.

In his PTA, the appellant agreed to plead guilty to four drug-related specifications. He also agreed to cooperate with the government in its prosecution of two other Marines, Sergeant (Sgt) Soto and Corporal Black, by submitting to interviews and, if granted immunity, by testifying. In return, the CA agreed to suspend any adjudged confinement in excess of seven months if the appellant received a punitive discharge. The CA made other promises as well. The CA promised to "make all reasonable efforts to coordinate in advance, fund, and obtain the physical presence of at least one of" the appellant's defense counsel at any of the agreed-to interviews or testimony.[6] If reasonable efforts failed, or if scheduling conflicts prevented his counsel from attending, the appellant agreed to proceed without counsel, understanding that he would be allowed to contact counsel should the need arise. Additionally, the CA promised not to confine the appellant at the same confinement facility as other members who were "affected by [the appellant's] cooperation with [the Naval Criminal Investigative Service]."[7] The CA also promised that the government would make its "best effort" to confine the appellant at either the Camp Pendleton or Marine Corps Air Station Miramar Brig.[8]

The appellant alleges that the government violated the PTA in two ways. First, his attorney was not present while he gave testimony against Sgt Soto. The appellant's trial defense counsel had executed change-of-station orders to the East Coast shortly after the appellant's trial, and only attended telephonically after the appellant was already undergoing cross-examination. Second, the appellant was confined with Sgt Soto and Lance Corporal (LCpl) Hicks, both of whom were affected by the appellant's cooperation.

The government concedes that, because of the trial counsel's oversight, the appellant's counsel did not hear the appellant's direct testimony against Sgt Soto. During a recess, the two trial counsel in that case realized their error and called the appellant's defense counsel, enabling her to hear some of the cross-examination. The government adds that the appellant's counsel had been present telephonically during several—but not all—pretrial interviews.

As for the government's promise not to confine the appellant with Marines affected by his cooperation, the government concedes that a clerical error caused the appellant to be confined in the Miramar brig with the two Marines. But according to the trial counsel's affidavit, when given an opportunity to transfer to a different brig, the appellant preferred to remain at Miramar. In addition to the trial counsel's affidavit, the government has

---

[6] Appellate Exhibit I at ¶ 16(f).

[7] *Id.* at ¶ 16(h).

[8] *Id.*

presented emails from the trial defense counsel to the Miramar brig staff. In the emails, the appellant's counsel reminded brig staff of the appellant's role in other inmates' cases. But she does not ask for the appellant's transfer. Rather, in the email, the appellant's counsel seems to acquiesce to the appellant's confinement at Miramar. These emails tend to corroborate the trial counsel's assertion that the appellant preferred to stay in the Miramar brig rather than be transferred.

We first must decide whether the relevant terms of the PTA were material. We do not believe that the government's failure to telephonically produce the appellant's defense counsel during his direct examination constitutes a material breach. The appellant's counsel had already been present for pretrial interviews and would have known the substance of the appellant's testimony. The appellant apparently did not remind anyone to notify his counsel at the beginning of his testimony. There is no evidence that the appellant's direct testimony resulted in any detriment to the appellant. We find, therefore, that this oversight was not a material breach.

Regarding the government's promise not to confine the appellant with members affected by his cooperation, the government argues that the appellant's decision to remain confined at Miramar after initially being confined there in error demonstrates that this term was also not material. We agree. Although the government's breach was raised by the appellant's counsel as a matter in clemency, the fact the appellant declined to be transferred away from other members affected by his cooperation convinces us that this was not a material term.[9]

## B. Alleged error in the SJAR

The appellant alleges that he was prejudiced by the SJAR because it contained errors and did not sufficiently address allegations of legal error he raised.

On 29 April 2016, the appellant's counsel sent a clemency request to the staff judge advocate (SJA). About two months later, the SJA completed the SJAR, which was served on the appellant in confinement. Without consulting counsel, the appellant waived his right to submit a response to the SJAR. On 23 June 2016, the CA acted on the appellant's case. The next day, trial defense counsel sent an additional clemency request, which included a response to the SJAR alleging legal error. This letter pointed out that the SJAR had an incomplete and mistaken statement of the law (apparently because of a typographical error) and argued that the appellant's earlier waiver of the right to submit matters was ineffective. The letter also argued

---

[9] *See Lundy*, 63 M.J. at 303-04.

that the SJAR tended to unfairly minimize the appellant's cooperation with the government.

In an addendum to the SJAR, the SJA fixed the typographical error and presented the appellant's new matters to the CA. Ultimately, the appellant sent a total of four clemency requests to the CA, arguing for clemency and alleging legal error. In three addenda to the SJAR, the SJA responded by correcting some errors, disagreeing with others, and recommending that the appellant's sentence be approved in accordance with the PTA. After considering the four clemency requests, the SJAR, and the three addenda to the SJAR, the CA withdrew his initial action and substituted a new one, again approving the sentence in accordance with the PTA. The appellant now alleges that the SJA's responses contained in three addenda to the original SJAR are unfairly dismissive of the appellant's submissions.

To prevail on a claim of post-trial error, an appellant must show that the process was affected by an error and make a "colorable showing of possible prejudice."[10] We find that the appellant has not met this burden.

"The essence of post-trial practice is basic fair play—notice and the opportunity to respond."[11] Although the post-trial processing of this case was sloppy, the appellant's counsel took full advantage of her opportunity to point out to the CA the errors in, and her disagreements with, the SJAR. We are confident that the appellant was able to make his case sufficiently to the CA, and that none of the post-trial errors resulted in a colorable showing of possible prejudice.

### III. CONCLUSION

The findings and sentence are affirmed.

Senior Judge HUTCHISON and Judge SAYEGH concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[10] *United States v. Chatman*, 46 M.J. 321 323-24 (C.A.A.F. 1997).

[11] *United States v. Leal*, 44 M.J. 235, 237 (C.A.A.F. 1996).