# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 39939

————————————

### UNITED STATES
*Appellee*

**v.**

### Paul J. GOLDMAN
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 20 January 2022

————————————

*Military Judge:* Charles G. Warren.

*Sentence:* Sentence adjudged on 11 March 2020 by GCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 21 May 2020: Bad-conduct discharge, confinement for 10 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Lieutenant Colonel Dayle P. Percle, USAF; Major Abbigayle C. Hunter, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, LEWIS, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge LEWIS delivered the opinion of the court, in which Chief Judge JOHNSON and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

LEWIS, Senior Judge:

In accordance with Appellant's pleas and pursuant to a plea agreement, a general court-martial composed of a military judge found Appellant guilty of two specifications of willfully disobeying a superior commissioned officer, one specification of failure to obey a lawful general regulation, one specification of wrongful use of marijuana, three specifications of assault consummated by a battery, two specifications of assault consummated by a battery of a child, one specification of obstruction of justice, one specification of wrongful extramarital sexual conduct, one specification of child endangerment, and one specification of drunk and disorderly conduct, in violation of Articles 90, 92, 112a, 128, 131b, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 892, 912a, 928, 931b, and 934.[1,2]

Some of Appellant's offenses occurred prior to 1 January 2019 and Appellant elected to be sentenced under the sentencing procedures that took effect on 1 January 2019. *See* Rule for Courts-Martial (R.C.M.) 1002(d)(2) (addressing segmented sentencing for confinement and fines and concurrent or consecutive confinement terms). Consistent with the plea agreement, the military judge sentenced Appellant to a bad-conduct discharge, a total of ten months of confinement,[3] reduction to the grade of E-1, and a reprimand.

Pursuant to the plea agreement, the convening authority agreed to dismiss the following, with prejudice, after announcement of sentence: (1) Charge IV and its two specifications, which alleged violations of Article 120, UCMJ, 10 U.S.C. § 920 (*Manual for Courts-Martial, United States* (2016 ed.)); and (2) Charge V, Specification 4, which alleged a violation of Article 128, UCMJ, 10 U.S.C. § 928 (*Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*)). Prior to adjourning the court-martial, the military judge granted the Government's motion to dismiss with prejudice Charge IV and its specifications and Charge V, Specification 4.

---

[1] Unless otherwise noted, references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). As Appellant's convicted offenses spanned from 1 December 2015 to 6 September 2019, references to the punitive articles of the UCMJ are to the 2019 *MCM*, *Manual for Courts-Martial, United States* (2016 ed.), and *Manual for Courts-Martial, United States* (2012 ed.).

[2] Pursuant to the plea agreement, Appellant pleaded guilty, excepting certain words from one of the three specifications of assault consummated by a battery, one of the two specifications of assault consummated by a battery of a child, and the child endangerment specification.

[3] The confinement terms ran concurrently and varied from a low of three months to a high of ten months.

On 5 May 2020, after considering Appellant's clemency submission and consulting with the staff judge advocate, the convening authority took no action on the findings or sentence. The convening authority granted Appellant's request to defer the adjudged reduction to the grade of E-1 from 14 days after the sentence was announced until the date of the entry of judgment (EoJ). The convening authority also deferred the automatic forfeitures of pay and allowances from 14 days after announcement of sentence until the date of the EoJ. The convening authority waived the automatic forfeitures for a period of six months, or expiration of term of service, with the waiver commencing on the date of the EoJ, and directed the forfeitures be paid to Appellant's former spouse, MP, for the benefit of Appellant's dependent child, EG. Finally, the convening authority provided the language for Appellant's reprimand.

The military judge signed the EoJ on 21 May 2020. The EoJ does not state that Charge IV and its two specifications and Charge V, Specification 4, were dismissed *with prejudice*. Rather, it states they were "Withdrawn and Dismissed After Arraignment."

Appellant raises three assignments of error: (1) whether the convening authority's failure to unambiguously dismiss certain charges and specifications with prejudice constituted noncompliance with a material term of the plea agreement; (2) whether Appellant is entitled to sentence relief because his record of trial is incomplete; and (3) whether Appellant is entitled to appropriate relief as the convening authority failed to take action on the sentence as required by law.[4]

We find that a remand to the Chief Trial Judge, Air Force Trial Judiciary, is the appropriate response to resolve Appellant's first assignment of error. *See United States v. Samples*, No. ACM S32657, 2021 CCA LEXIS 463, at \*5 (A.F. Ct. Crim. App. 15 Sep. 2021) (unpub. op.) (finding a failure to state charged offenses in an EoJ were dismissed with prejudice implies those charged offenses were dismissed without prejudice).

During the remand, we authorize a detailed military judge to address the errors and omissions documented in Appellant's second and third assignments

---

[4] We have reworded the assignments of error. We granted Appellant's motion to file issue (3) as a supplemental assignment of error.

of error. We also authorize correction of additional errors in the EoJ and correction of the record of trial due to an omission of the audio recording of one session of the trial proceedings.[5]

## I. BACKGROUND

The military judge convicted Appellant of 13 offenses across 5 charges. We summarize the offenses generally and group certain offenses together.[6] We describe most of the offenses in chronological order.

### A. Assault Consummated by a Battery, Child Endangerment, and Drunk and Disorderly Offenses

Appellant was convicted of assault consummated by a battery against three adults and two children. He was also convicted of child endangerment of one of the two children. Finally, Appellant was convicted of a drunk and disorderly conduct offense that occurred the same night as three of the battery offenses.

The first battery offense occurred between April 2016 and December 2017. During an argument, Appellant unlawfully pushed MP, his first wife, on the chest with his hands. The push caused MP's body to hit a wall putting a hole in it. Later, MP took three photographs, which showed red marks on her body.

The child endangerment offense occurred while Appellant was still married to MP. The victim of the offense was his then six-month-old daughter, EG. In April 2017, MP was changing EG's diaper while simultaneously arguing with Appellant. Appellant threw a plush ostrich toy with plastic eyes at MP. The toy was about half of the size of his daughter. During the providence inquiry, Appellant described the throw as "hard and directly like a fastball." Appellant also described the throw as a "seven or an eight" on a scale of zero to ten, with ten being the hardest he could throw it. The toy missed MP, hit a wall, and struck objects on EG's changing table before stopping within six inches of EG. Appellant described why he believed his actions constituted culpable negligence that might have resulted in foreseeable harm to EG and why he breached his duty of care for her.

The second battery offense occurred in the summer of 2018. By this time, MP and Appellant had divorced. EG, then 2 years old, was visiting Appellant in San Antonio, Texas, under a custody arrangement. While driving, Appellant unlawfully struck EG across the face with his hand causing her lip to bleed. At

---

[5] Some of these issues were discovered in conducting our Article 66, UCMJ, 10 U.S.C. § 866, review.

[6] The background is drawn from the stipulation of fact, Appellant's providence inquiry, and the testimony of sentencing witnesses.

the time Appellant struck her, EG was strapped in a car seat in the backseat. Appellant used force against EG that went beyond any disciplinary purpose. During the providence inquiry, Appellant described his level of force as "unreasonable and excessive."

Appellant committed the third, fourth, and fifth battery offenses on 22 December 2018 while at a local San Antonio hotel. Two of the offenses were against adults and one was against a child. On this evening, Appellant, his second wife, MO, and her family were attending a holiday party at the hotel, where they had also rented a room. MO's family included MO's mother, MO's sister, and MO's one-year-old daughter. Once in the hotel room, Appellant was told by MO and her family to go to sleep, as he was intoxicated from consuming alcohol earlier that night. Appellant became agitated and tried to leave the hotel room. MO's mother and sister were between Appellant and the hotel room's door. First, Appellant pushed MO's mother on her body with his arms causing her to move. Second, Appellant pushed MO's sister in a similar manner with a similar result. Third, and finally, Appellant pushed MO's mother a second time, which caused her to fall into MO's sister, who then fell into MO's one-year-old daughter. According to Appellant, none of the three sustained any injuries.

The drunk and disorderly conduct offense also occurred on the same night as described above and while at the hotel. Due to his intoxication, Appellant was "loud and obnoxious" and "disruptive and rude" which led to an adjacent guest complaining to the hotel's staff. The hotel staff called the San Antonio police who responded to Appellant's room. Despite the arrival of uniformed officers, Appellant continued to be loud and belligerent which led the police to detain him in handcuffs inside his hotel room. Appellant stated during the providence inquiry that his actions "lowered the image of the Air Force to several civilians" including MO's family and the police officers who responded.

**B. Extramarital Sexual Conduct and Obstruction of Justice**

In the first few months of 2019, while still married to MO,[7] Appellant met a woman on the dating application Tinder. Eventually, this woman allowed Appellant to move into her residence. She knew he was in the military. Appellant's supervisor discussed these living arrangements with Appellant and warned him to be careful, as he was still married. Despite the warning, Appellant began a sexual relationship with the woman and engaged in sexual intercourse with her on multiple occasions in a month. Others learned of this sexual

---

[7] Appellant was also not legally separated from MO.

relationship, including MO and the woman's estranged husband.[8] In his providence inquiry, Appellant provided reasons why he believed his actions were service discrediting and constituted wrongful extramarital sexual contact.

At the time of this sexual relationship, Appellant believed that he would face a criminal investigation for the December 2018 incidents with MO's family at the San Antonio hotel. Appellant's commander had also issued him a no-contact order, which prohibited communication with MO. Appellant thought the ensuing investigation would reveal, and ultimately encompass, his sexual relationship with the woman he met on Tinder. Appellant then asked her to lie, if questioned, and say she had not had sex with him. Appellant explained in his providence inquiry why he believed his actions constituted obstruction of justice.

## C. Drug Offense

Appellant wrongfully used marijuana, once, in a vehicle with another Airman on Joint-Base San Antonio (JBSA)-Lackland. This offense occurred in the late May to late June 2019 timeframe. Appellant's wrongful use of marijuana was discovered when his urine tested positive for tetrahydrocannabinol, the active ingredient in marijuana. On 23 June 2019, Appellant's commander restricted him to the limits of JBSA-Lackland.

## D. Disobedience Offenses

Appellant failed to obey a lawful general regulation, Air Force Instruction 31-101, *Integrated Base Defense* (5 Jul. 2017), by failing to register a privately owned firearm that he stored in his base house on JBSA-Lackland. This offense was discovered in November 2018 when security forces responded to Appellant's house after Appellant displayed "suicidal ideations." These included Appellant placing the loaded firearm against his head with his finger on the trigger. Eventually, Appellant changed his mind, placed the firearm on top of a printer, and went to bed before being awoken by security forces.

Appellant disobeyed two different orders of his commander between 1 April 2019 and 6 September 2019. First, Appellant disobeyed the order restricting him to JBSA-Lackland in August 2019 when he left the installation with his brother who had recently graduated from Basic Military Training. Appellant also violated the no contact order prohibiting him from contacting his second wife, MO, on at least two occasions in April and May 2019. Appellant was ordered by his commander into pretrial confinement on 6 September 2019 and so remained, at various locations, until he was sentenced.

---

[8] Appellant told the military judge the woman was legally separated from her husband and that the husband was a former military member.

## II. DISCUSSION

### A. Plea Agreement Noncompliance

The parties agree that the EoJ and Statement of Trial Results[9] do not show that the convening authority dismissed either Charge IV and its specifications or Specification 4 of Charge V with prejudice. Initially, Appellant requested our court take corrective action by dismissing the affected charge and specifications with prejudice. However, in Appellant's reply brief, the requested remedy is a corrected EoJ to show the dismissal with prejudice occurred and consistent with what our court did in *Samples*. *See*, unpub. op. at \*5–11.

The Government requests we exercise our R.C.M. 1112(c)(2) authority and modify the EoJ ourselves. The Government states that other Courts of Criminal Appeals have exercised their authority to amend EoJs "with some regularity." Our court was granted discretion to correct EoJs by the President in the 2019 *MCM*. It is obvious from the cases cited in the Government's answer that other Courts of Criminal Appeals have exercised this discretion. We disagree with the Government that this is the "most appropriate remedy" in this particular case. We agree with Appellant's proposed resolution and see no reason to depart from the remand approach this court took in *Samples*.

A plea agreement in the military justice system establishes a constitutional contract between the accused and the convening authority. *See United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006)) (addressing a pretrial agreement). "In a criminal context, the [G]overnment is bound to keep its constitutional promises." *Lundy*, 63 M.J. at 301. "When an appellant contends that the [G]overnment has not complied with a term of the agreement, the issue of noncompliance is a mixed question of fact and law." *Smead*, 68 M.J. at 59 (citing *Lundy*, 63 M.J. at 301). Appellant has the burden to establish both materiality and noncompliance. *Lundy*, 63 M.J. at 302. "In the event of noncompliance with a material term, we consider whether the error is susceptible to remedy in the form of specific performance or in the form of alternative relief agreeable to the appellant." *Smead*, 68 M.J. at 59 (citation omitted).

The parties agree that the dismissal with prejudice provision of the plea agreement was material to Appellant's plea of guilty and the EoJ does not reflect that the convening authority complied with that provision. We agree that

---

[9] Appellant also correctly notes that the Statement of Trial Results failed to include the command that convened this court-martial as required by R.C.M. 1101(a)(3). Appellant does not raise an assignment of error. We find there is no prejudice from this minor omission. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at \*2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (unpub. op.) (per curiam).

the provision was material as it provided Appellant protection from facing later prosecution for the charged offenses, which the convening authority agreed to dismiss with prejudice. We find the convening authority complied with the provision as the military judge dismissed the affected charge and specifications, on the record. However, the EoJ, which the military judge signed, does not reflect the convening authority's compliance or demonstrate the actions the military judge took on the record. Therefore, as the failure to state that offenses were dismissed with prejudice implies that they were dismissed without prejudice, we find a remand appropriate to correct the EoJ. *See Samples*, unpub. op. at *5.

**B. Additional EoJ Errors**

On remand, a detailed military judge may also modify the EoJ to correct the following errors:

- The EoJ incorrectly states the convening authority deferred "all of the adjudged" forfeitures. First, the military judge *adjudged* no forfeitures. Second, the convening authority's decision on action memorandum correctly omitted any reference to *adjudged* forfeitures when addressing the question of deferral.
- The convening authority deferred Appellant's reduction to the grade of E-1 from 14 days after announcement of sentence until the date of the EoJ. The EoJ omits the convening authority's decision on deferral of reduction in grade.[10] Instead, the EoJ repeats a statement, which is partially incorrect, regarding deferral of forfeitures.
- The convening authority waived the automatic forfeitures of all pay and allowances for a period of six months or release "of" confinement, whichever is sooner, and directed the forfeitures be paid to MP for the benefit of Appellant's dependent child. However, the EoJ only states that the "pay" was directed to be paid to MP, rather than the "total pay and allowances."
- The reprimand in the EoJ misspells United States Air Force. It is correctly spelled in the convening authority's decision on action memorandum.

---

[10] Appellant identified this error, but did not assert prejudice from it. We find it appropriate to authorize the error be corrected on remand.

**C. Record of Trial Completeness**

Appellant makes three claims that the record of trial is incomplete. We address an additional deficiency in the audio recordings of the trial proceedings we identified during our Article 66, UCMJ, review.

First, Appellant claims that three appellate exhibits are incomplete—Appellate Exhibit XIV, pages 9–11, Appellate Exhibit XVII, pages 28–29, and Appellate Exhibit XVIII, pages 39–40—because the pages are blank except for the page numbers annotated on the bottom. The Government asserts that nothing is missing because these pages were intentionally left blank. If a detailed military judge determines the Government is correct, then pages may be substituted in the record to identify that the affected pages were "intentionally left blank." If a detailed military judge determines Appellant is correct, then the military judge may attempt to reconstruct the affected portions of the appellate exhibits or indicate that such a process cannot be completed.

Second, Appellant asserts that the record of trial is missing email rulings made by the military judge on 21 January 2020 on a defense motion to dismiss for violations of Article 10, UCMJ, 10 U.S.C. § 810, and a defense motion for appropriate relief to release Appellant from pretrial confinement. On 13 September 2021, we granted the Government's motion to attach a declaration from the assistant trial counsel in Appellant's case and a six-page email containing the military judge's rulings on the two motions.[11] On remand, a detailed military judge may follow the process in R.C.M. 1112(d)(2) to correct the record of trial to add the email rulings made by the trial judge as an appellate exhibit.

Third, Appellant claims that his copy of the record of trial did not include the court reporter's certification. We granted the Government's unopposed motion to attach a copy of the court reporter's certification. However, in performing our review of the original record of trial docketed with the court, we note that it already contained the court reporter's certification in volume 7. As Appellant and his counsel received the court reporter's certification when this court granted the motion to attach, this claim of error does not require corrective action on remand. We find this claim of error warrants no further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

In conducting our Article 66, UCMJ, review, we could not locate one audio recording of one session of open court in the record of trial. R.C.M. 1112(b)(2)

---

[11] The motion to attach was unopposed. We understand we are permitted to supplement the record when deciding issues that are raised by the materials in the record but are not fully resolvable by those materials. *See United States v. Jessie*, 79 M.J. 437, 440–42 (C.A.A.F. 2020). Here the military judge stated his intent to rule on these two motions "ASAP" but his email rulings were not marked as an appellate exhibit.

requires a "substantially verbatim recording of the court-martial proceedings except sessions closed for deliberations or voting." The missing recording would cover the proceedings conducted on 15 January 2020 beginning at 1110 hours and ending at 1200 hours. This recording would correspond to pages 1–39 of the certified transcript. On remand, a detailed military judge may follow the process in R.C.M. 1112(d)(2) to correct the record of trial to add the omitted recording. If the military judge determines that the recording is present in the record of trial, but was mislabeled, then the disc that contains the recordings of open sessions of the court may be modified accordingly.[12]

## D. Convening Authority's Decision on Action

Regarding Appellant's third assignment of error, consistent with our superior court's decision in *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20-0345, 2021 CAAF LEXIS 818, at *1–2 (C.A.A.F. 7 Sep. 2021) (per curiam), we find the convening authority made a procedural error when she failed to take action on the entire sentence, as Appellant was found guilty of at least one offense that occurred prior to 1 January 2019 and the charges were referred after 1 January 2019. Rather than test that procedural error for material prejudice to a substantial right of Appellant, we authorize a detailed military judge on remand to resolve the procedural error. This course of action is appropriate, as we have already determined a remand is necessary to resolve Appellant's first assignment of error.

## III. CONCLUSION

The record of trial is **REMANDED** to the Chief Trial Judge, Air Force Trial Judiciary, for correction of the entry of judgment as noted above. Article 66(g), UCMJ, 10 U.S.C. § 866(g); R.C.M. 1111(c)(3).

A detailed military judge may correct the record of trial under R.C.M. 1112(d) to address (1) the blank pages in three appellate exhibits, (2) the two email rulings made by the military judge that were not included in the record of trial, and (3) the missing audio recording of one session of open court.

A detailed military judge may return the record of trial to the convening authority or her successor to take action on the sentence.

A detailed military judge may conduct one or more Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3), proceedings using the procedural rules for post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), sessions.

---

[12] The file names of the recordings include a date and time, none of which correspond to the date and time of the session of court that we cannot locate.

Thereafter, the record of trial will be returned to the court for completion of appellate review under Article 66(d), UCMJ.

Appellate counsel for the Government will inform the court not later than 15 March 2022, in writing, of the status of compliance with the court's decree unless the record of trial has been returned to the court prior to that date.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court