*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Michael B. POWELL**
Machinist's Mate (Nuclear) First Class (E-6), U.S. Navy
*Appellant*

**No. 201900280**

Decided: 16 April 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ann B. Minami (arraignment)
Kimberly Kelly (trial)

Sentence adjudged 10 July 2019 by a general court-martial convened at Naval Base Kitsap, Washington, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 42 months, and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Commander Erin Alexander, JAGC, USN*

---

[1] Pursuant to a plea agreement, the convening authority suspended confinement in excess of 30 months.

For Appellee:
*Lieutenant Jennifer Joseph, JAGC, USN*

Judge STEWART delivered the opinion of the Court, in which Senior Judge GASTON and Judge HOUTZ joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

STEWART, Judge:

Appellant was convicted, pursuant to his pleas, of two specifications of attempted sexual abuse of a child in violation of Article 80, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 880 (2012 & Supp. III 2016), for communicating indecent language to, and arranging to meet and have oral sex[2] with, a fictitious individual named "Mackenzie."[3]

He asserts three assignments of error [AOEs]: (1) the military judge erred in accepting Appellant's plea of guilty to Specification 1 of the Charge with respect to lewd messages sent to Mackenzie because she failed to discuss with him the defense of mistake of fact as to Mackenzie's age; (2) Appellant is entitled to sentencing relief for the Government's failure to timely comply with the pretrial agreement regarding deferment and waiver of forfeitures and rate reduction; and (3) Appellant's trial defense counsel were ineffective for admitting Defense Exhibit D into evidence. We find no prejudicial error and affirm.

---

[2] The attempted offenses would have been in violation of Article 120b, UCMJ.

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

## I. BACKGROUND

Appellant posted an online ad using a fictitious name—including a photo of himself in military fatigues—asking "where the action is?"[4] Naval Criminal Investigative Service [NCIS] undercover agents purporting to be a 13-year-old, Mackenzie, replied to the ad and engaged in an email conversation with Appellant. After a little more than a week of exchanging emails, during which Mackenzie apprised Appellant that she was "almost fourteen" years old, their conversation became sexual in nature. Appellant provided her his username for a mobile messaging application known for providing anonymity to its users, and the conversation shifted to that platform. The conversation continued to revolve around sexual acts and Appellant's sexual desires. At one point, the following exchange took place:

| | |
|---|---|
| Mackenzie: | You probably like girls older than me then. |
| Appellant: | What you thinking? |
| Mackenzie: | That's what I was thinking. |
| Appellant: | Oh, why? |
| Mackenzie: | Cause I'm 13. My boobs aren't big. |
| Appellant: | I thought you said you were 16. |
| Mackenzie: | No. I told u. |
| Appellant: | Ok. |
| Mackenzie: | If u don't like me it ok. |
| Appellant: | I didn't say that, besides, I haven't even seen you yet.[5] |

Ultimately, Appellant arranged to meet Mackenzie at a fast-food restaurant onboard Naval Base Kitsap-Bangor to receive oral sex from her. On the agreed-upon date, Appellant drove to the restaurant and parked in the restaurant parking lot after purchasing condoms at the local Navy Exchange mini-mart. Once he exited his vehicle and started walking toward the restaurant, he was apprehended by NCIS.

---

[4] Pros. Ex. 2 at 1.

[5] Pros. Ex. 2 at 14. Throughout this opinion, the digital communications are presented as written.

Pursuant to a pretrial agreement, Appellant pleaded guilty by exceptions and substitutions to two specifications of attempted sexual abuse of a child, for communicating indecent language to Mackenzie and then attempting to meet her for sex. During the providence inquiry, the military judge explained the defense of mistake of fact as to Mackenzie's age with respect to each specification. Appellant affirmed that he understood that defense and the elements of the charges against him. When asked to explain in his own words why he believed himself guilty of Specification 1 of the Charge, Appellant stated, "Your Honor, when we started communicating, she had stated that she was 13, almost 14, and I continued to talk to her as stated."[6] Later, when the military judge asked about the lewd statements he was charged with communicating to Mackenzie, Appellant responded as follows:

> MJ: And in this particular case, you mentioned that you knew you were speaking with somebody who was 13 years old, correct?
>
> Appellant: Yes, ma'am.
>
> . . .
>
> MJ: Okay. And so how does that affect whether [the statement is] indecent, if at all?
>
> Appellant: Ma'am, because—yes, because she was 13, and she was a child. Yeah, her—her age does make it indecent.
>
> MJ: In what way?
>
> Appellant: Because she is young, she's—she is 13 years old.[7]

The military judge accepted Appellant's pleas of guilty to both specifications.

## II. DISCUSSION

### A. The Military Judge Properly Accepted Appellant's Pleas

Appellant asserts the military judge erred in accepting his plea of guilty to Specification 1 with respect to two of the indecent messages he sent to Mackenzie. He argues that the military judge failed to advise him of the

---

[6] R. at 32.

[7] R. at 39.

defense of mistake of fact as to age as to these two messages, and that he harbored an honest but mistaken belief that Mackenzie was at least 16 years of age when he made those specific comments in light of his message that he "thought [she] said [she was] 16."[8]

We review a military judge's decision to accept a guilty plea for an abuse of discretion.[9] We apply "the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law that would raise a substantial question regarding the Appellant's guilty plea."[10]

Article 45(a), UCMJ, requires that in a guilty plea case, if an accused makes an irregular pleading, sets up a matter inconsistent with his pleas, or enters pleas of guilty improvidently, his pleas of guilty should be rejected.[11] In such circumstances, military judges should ordinarily only accept an accused's pleas of guilty if the providence inquiry is reopened, and any inconsistencies are resolved.[12] A matter may be inconsistent with a plea of guilty if it raises the possibility of a defense.[13] Thus, where the possibility of a defense is presented on the record, military judges are expected to conduct further inquiry directed at the possible defense, or reject an accused's plea.[14] The "possible defense" standard is not to be confused with the standard to determine whether a defense "*is* available or whether members in a contested case should be given an instruction."[15] We also must not confuse a "possible defense," which would necessitate further inquiry into an accused's pleas,

---

[8] Pros. Ex. 2 at 14.

[9] *United States v. Smead*, 68 M.J. 44, 65 (C.A.A.F. 2009) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)).

[10] *Id.*

[11] UCMJ, Article 45(a), 10 U.S.C. § 845(a); see also *United States v. Zachary*, 63 M.J. 438, 444 (C.A.A.F. 2006) (quoting *United States v. Outhier*, 45 M.J. 325, 331 (C.A.A.F. 1996); *see also United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007)

[12] *United States v. Phillipe*, 63 M.J. 307, 309 (C.A.A.F. 2006).

[13] *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012); *see also United States v. Goodman*, 70 M.J. 396, 399-400 (C.A.A.F. 2011) (requiring a mistake of fact defense to be "reasonably raised" before it can create an inconsistency in a guilty plea).

[14] *Id. see also*, *Phillipe*, 63 M.J. at 310.

[15] *Id.* (emphasis in original).

with the "mere possibility of a defense," which would not.[16] In determining whether an inconsistency or possible defense necessitating further inquiry exists, we consider the "full context" of the plea inquiry, including the stipulation of fact.[17]

Here, we find no abuse of discretion in the military judge's acceptance of Appellant's plea, for several reasons. First, while the specific messages Appellant challenges took place relatively early in his conversation with Mackenzie after he sent a message stating that he thought Mackenzie had said she was 16 years old—and before their conversation transitioned to chat where Mackenzie reiterated her "age"—the messages *followed* Mackenzie's email stating "im almost 14. I come to Silverdale sometimes to see ym [sic] dad. How long have you been here," to which Appellant simply responded, "couple months."[18]

Second, Appellant pleaded guilty acknowledging the truth of a stipulation of fact wherein he confirmed with respect to Specification 1 that he believed Mackenzie to be 13 years old "because on December 13, 2018, Mackenzie told me that she was 'almost 14' years-old."[19] Appellant responded in the negative when the military judge asked, "Is there anything in the stipulation that you do not wish to admit is true?"[20]

Third, during the providence inquiry conducted by the military judge, Appellant affirmed that prior to the first lewd message for which he was charged, he "knew" he was speaking to someone who was 13 years old. He specifically added, "[w]hen we *started* communicating, she had stated that she was 13, almost 14, and I continued to talk to her."[21] When describing why his communication to her was indecent, Appellant stated it was because "she was 13, and she was a child."[22] With respect to the second communication at

---

[16] *Id.* (citing *Shaw*, 64 M.J. at 462).

[17] *Goodman*, 70 M.J. at 399 (citation omitted).

[18] Pros. Ex. 2 at 6. We also note that when Appellant later told Mackenzie, "I thought you said you were 16," she immediately responded, "No. I told u," to which he replied, "Ok." Pros. Ex. 2 at 14.

[19] Pros. Ex. 1 at 1.

[20] R. 26.

[21] R. 32 (emphasis added); *see also* Pros. Ex. 1 at 1.

[22] *Id.*

issue, Appellant confirmed that he understood the language to be indecent because "it is not acceptable for an adult male to speak to a 13-year-old about masturbation or oral sex."[23] Thus, despite Appellant's single comment suggesting he was mistaken as to her age, he clarified on the record multiple times that he believed Mackenzie was 13 years old for the duration of their conversation, to include the messages he seeks to have this Court set aside on appeal.

Finally, Appellant's suggestion that the military judge failed to inquire adequately into the defense of mistake of fact as to age is unsupported by the record. She plainly advised Appellant of the mistake-of-fact-as-to-age defense, Appellant acknowledged his understanding of it, and the hearing proceeded without further mention of it as a possible defense. The record as a whole does not raise the "possibility of a defense" in a way that would require any more inquiry than that conducted by the military judge, who more than adequately resolved any potential ambiguity presented by the single message on which Appellant bases his argument.

## B. Appellant Received the Full Benefit of the Bargain of the Pretrial Agreement and is Not Entitled to Additional Relief

Appellant asserts the Government failed to timely comply with the pretrial agreement regarding deferment and waiver of forfeitures and rate reduction, and therefore seeks sentencing relief. While the interpretation of a pretrial agreement's provisions is a question of law we review de novo, the question of whether the Government complied with a pretrial agreement's terms is a mixed question of law and fact.[24]

Appellant bears the burden of demonstrating that a significant basis in law or fact exists to overturn his guilty plea.[25] In the context of a dispute over execution of the pretrial agreement's provisions, Appellant must establish that "a term or condition was material to his decision to plead guilty, that the Government failed to comply with that term or condition, and therefore, that his plea was improvident."[26] In determining materiality, we look to the agreement itself and the appellant's understanding of the terms "as reflected

---

[23] R. 40–41; *see also* Pros. Ex. 1 at 1.

[24] *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006) [*Lundy II*].

[25] *Id.*

[26] *Id.* at 302.

in the record as a whole."[27] When an issue of pay is a material term, "a plea may be rendered improvident where the Government fails to provide requisite pay."[28] When the Government fails to comply with a material provision of a pretrial agreement, we may provide a remedy in the form of either specific performance, withdrawal of the plea, or alternative relief with Appellant's consent.[29]

Here, Appellant negotiated a pretrial agreement with the convening authority in the hope of protecting his family from the financial harm stemming from any reduction in paygrade.[30] Regarding reductions, the agreement provided:

> Adjudged reductions may be approved as adjudged; however, any adjudged reduction will be suspended for 6 months from the date of the convening authority's action . . . . This Agreement constitutes [Appellant's] request for, and the convening authority's approval of, deferment of that adjudged reduction which is to be suspended pursuant to the terms of this Agreement and would otherwise become effective under Article 57(a)(1), UCMJ. The period of deferment will run from the date the adjudged reduction would otherwise become effective until the date of the convening authority's action.[31]

For automatic reductions, the agreement provided that "automatic reduction in pay grade will be suspended for six months from the date of convening authority's action, at which time, unless sooner vacated, the part of the

---

[27] *United States v. Flores*, No. 200501199, 2007 CCA LEXIS 73, at *7 (N-M. Ct. Crim. App. Mar. 15, 2007) (unpublished) (citing *Lundy II*, 63 M.J. at 301); *see also United States v. Perron*, 58 M.J. 78, 85 (C.A.A.F. 2003).

[28] *United States v. Hatcher*, No. 200900572, 2010 CCA LEXIS 396, at *6-7 (N-M. Ct. Crim. App. Dec. 21, 2010) (unpublished); *See also United States v. Smith*, 56 M.J. 271, 279 (C.A.A.F. 2002); *United States v. Hardcastle*, 53 M.J. 299, 302 (C.A.A.F. 2000); *United States v. Williams*, 53 M.J. 293, 295 (C.A.A.F. 2000).

[29] *Perron*, 58 M.J. at 85-86; *United States v. Lundy*, 60 M.J. 52, 60-61 (C.A.A.F. 2004).

[30] App. Ex. IV; *see also* R. at 111, 123 (arguing for a sentence that would have the least impact on Appellant's children).

[31] App. Ex. IV at 2.

automatic reduction that was suspended will be remitted without further action."[32]

Based on the leave and earning statements Appellant attached to the record, it appears Appellant's pay was reduced to E-1 at some point following the conclusion of his court-martial in July 2019 and that he remained at E-1 pay until his paygrade of E-6 was reinstated several weeks later.[33] It is difficult to determine with precision when Appellant's reduction in paygrade went into effect and when it was reinstated, as he only provided documentation substantiating that in August 2019 he was paid as an E-1, and then in October 2019 he was paid as an E-6, with back-pay for an indeterminate time period. In any event, Appellant concedes that with back-pay he was made whole from a financial standpoint by October.[34]

Whether it was the result of the adjudged or automatic reduction, Appellant should not have been subjected to reduction in paygrade under the terms of his pretrial agreement. Were it the case that the adjudged reduction took effect, this would be contrary to that portion of the pretrial agreement requiring deferment of the adjudged reduction until the convening authority's action.[35] If instead Appellant was subjected to automatic reduction, such reduction should have only been triggered upon the Entry of Judgment, at which point it should have been suspended under the agreement.[36] Nevertheless, because Appellant was provided back-pay for the time period he received E-1 pay, the question is whether Appellant has met his burden to establish that the timing of any reduction in paygrade was "material" to the reduction provisions of Appellant's pretrial agreement.[37] If so, we would consider granting one of the three types of relief contemplated in *Perron*.

---

[32] *Id.*

[33] We need not go into the details of Appellant's claim as to forfeitures, since based on the leave and earning statements Appellant attached to the record, it does not appear Appellant was ever subjected to forfeitures.

[34] Appellant Br. at 11 (acknowledging that the Government "caught up" with its payments).

[35] The adjudged reduction would come into effect fourteen-days following sentencing, and then deferred from that point until the convening authority's action. UCMJ, Art. 57(a)(1)(A), 10 U.S.C. § 857(a)(1)(A).

[36] UCMJ, Art. 58a(a), 10 U.S.C. § 858a(a).

[37] *Lundy II*, 63 M.J. at 302.

While the record establishes that Appellant was motivated to plead guilty in part due to the Government's assurances that the impact of a conviction on his family would be minimized, his pretrial agreement and colloquy with the military judge do not substantiate that timing of performance was material.[38] Appellant's case is closer to *Lundy II* than *Perron* in that *Perron* involved a colloquy with the military judge, and a clemency request, that more clearly established his family's immediate need for the appellant's pay, and thus the materiality of timing.[39] In *Lundy II*, by contrast, the terms of the pretrial agreement suggested that the *amount* of payment was material, but not necessarily the *timing* of that payment.[40] The provision at issue in *Lundy II* provided that the convening authority would "suspend any and all adjudged and waive any and all automatic reductions and forfeitures, and pay them to Appellant's wife to the full extent of the law."[41] CAAF interpreted "to the full extent of the law" to be the pivotal clause of the agreement, and determined that this language was a "term of art designed to maximize payment, but not necessarily expedite process."[42]

So too here. Irrespective of which reduction provision in Appellant's pretrial agreement triggered the error of which he complains, the language of these provisions "suggest[ ] emphasis on the amount of payment and not necessarily on the speed or timing of payment."[43] The record sheds little additional light on the materiality of the timing of any reduction.[44] Thus, while the reduction should not have taken place by virtue of the agreement and the statute,[45] the record as a whole does not suggest that timing was

---

[38] *Perron*, 58 M.J. at 85 (looking at the record as a whole to determine materiality).

[39] *Id.* at 79.

[40] *Lundy II*, 63 M.J. 303.

[41] *Id.* at 302.

[42] *Id.* at 303 (the parties agreed that "full extent of the law" at the time of Appellant's guilty plea meant "six months" from the convening authority's action).

[43] *Id.*

[44] R. at 111, 116 (Appellant only broadly argued that any punishment have the least impact possible on his children).

[45] Why the reduction was executed is not apparent in the record.

material to Appellant's decision to plead guilty, even if it was a relevant consideration.[46]

In any event, the Government specifically performed its duty in providing back-pay for the brief period in which Appellant was paid as an E-1. Appellant provides no indication, legal or otherwise, for why he has not been made whole by the Government's issuance of back-pay. He provides no support in the case law, and we find none ourselves, for his position that because his wife was deprived of his E-6 pay for some period of time, he should be entitled to a reduction in confinement.[47] Thus, even assuming Appellant had met his burden to demonstrate that the timing of continued payment as an E-6 was material to his decision to plead guilty, he has not demonstrated that a remedy in addition to the Government's specific performance is warranted in this case.

## C. Ineffective Assistance of Counsel

Appellant asserts his trial defense counsel [TDC] were ineffective for introducing Defense Exhibit D, a psychological clinical assessment regarding Appellant's possible sexual deviancy and recommendation for treatment.

We review claims of ineffective assistance of counsel de novo.[48] Our review uses the two-part test outlined in *Strickland v. Washington*.[49] "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[50] Our review "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[51] When an ineffective assistance of

---

[46] *Lundy II*, 63 M.J. at 304 (suggesting that timing may be relevant to a decision to plead guilty, but not necessarily material).

[47] While the record is unclear on the issue, we note that Appellant's leave and earnings statements suggest he failed to set up an allotment of pay to his wife, a requirement placed on him by his pretrial agreement, and a possible cause of any financial deprivation to his wife.

[48] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted).

[49] 466 U.S. 668, 687 (1984)

[50] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687).

[51] *Strickland*, 466 U.S. at 689.

counsel claim is premised on TDC deciding what evidence to present as a tactical decision this Court has held that "the decisions of . . . what evidence to present [is a] tactical decision [ ] and should not be subjected to the appellant's 'Monday morning quarterbacking.'"[52] With respect to whether the asserted deficiency resulted in prejudice, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[53]

Appellant asserts that TDC was deficient in introducing Defense Exhibit D because in addition to information that Appellant presented a low risk of re-offending, it also contained information that

> he had been engaging in online sexual chatting since the age of 13; he has an issue with communication with women online since 2011 that has caused stress in his marriage; he began using pornography at the age of 13 and purchased a membership for an "adult friend-finder;" he and others in his unit placed "phone advertisements" to "generate responses;" he developed a "sex addiction" and he used the Kik application to "sext" with other women during his marriage.[54]

We disagree with Appellant's characterization of Defense Exhibit D, which ignores how the exhibit was presented at sentencing.

As TDC explained to the military judge, the exhibit was offered as the "complete record of the psychosexual analysis that [the expert] performed on [Appellant], and what he reported to him in the moment as part of the entirety of his report."[55] He further highlighted its purpose as "an expert evaluation for likelihood of recidivism and rehabilitative potential."[56] During his sentencing argument, TDC focused on the report's conclusions as to Appellant's rehabilitative potential and low risk of recidivism:

---

[52] *United States v. Mitchell*, No. 9801469, 2000 CCA LEXIS 301, at *11 (N-M. Ct. Crim. App. June 30, 2000) (unpublished) (citation omitted).

[53] *Strickland*, 466 U.S. at 694.

[54] Appellant Br. at 13-14.

[55] R. at 82.

[56] *Id.*

> The evaluation concluded that [Appellant] does not appear to be a pedophile or sexually attracted to children, and that is based in large part on the Able evaluation, which is hard to fool. Rather than being a pedophile, this was poor impulse control, faulty judgment and a failure to escape the fantasy world that he had created for himself.[57]

What is evident from the record is the introduction of Defense Exhibit D in its entirety was a strategic decision to deliver a targeted message to the military judge. Strategic decisions to accept a risk or forgo a potential benefit are not deficient when the decisions are objectively reasonable.[58]

We find that, facing a strong Government sentencing case, TDC's decision to offer evidence of Appellant's low risk of recidivism by offering the entire psychologist's report was reasonable. Offering the entire report provided Appellant an opportunity to demonstrate the challenges he faced that led him to the misconduct and a willingness to be open with the sentencing authority, which supported his low risk of recidivism. The evidence Appellant complains of on appeal could just as easily be seen as mitigating, as Appellant was able to place before the military judge evidence that he was an individual struggling with addiction. We have previously tacitly approved a sentencing strategy based on the accused's "sickness," "weakness," and the "collateral matter" of his participation in a particular sex-offender treatment program.[59] In evaluating the defense counsel's decision to fashion her sentencing argument around collateral matters in that case, we "accord[ed] the highest levels of deference" to her professional judgment.[60] We reach the same conclusion here, decline to hold that such a strategy rendered TDC's performance deficient, and find it was within the bounds of reasonable professional assistance.

---

[57] R. at 123.

[58] *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012); *see also United States v. Stephenson*, 33 M.J. 79, 80 (C.M.A. 1991) (concluding it was not deficient performance to decline to call character witness at sentencing hearing to avoid harmful rebuttal evidence).

[59] *See United States v. Geronimo-Hernandez*, No. 201600383, 2018 CCA LEXIS 200, at *4, *11-12 (N-M. Ct. Crim. App. Apr. 28, 2018) (unpublished).

[60] *Id.*

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[61]

The findings and sentence are **AFFIRMED**.

Senior Judge GASTON and Judge HOUTZ concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[61] UCMJ, arts. 59, 66, 10 U.S.C. §§ 859, 860.